# Exhibit 1

# Proposed [Redacted] Version of the Company's Response in Opposition to Motion to Dismiss

Gregory S. Gilbert (6310)
Jon T. Pearson (10182)
Elody C. Tignor (15663)
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada 89134
702.669.4600
702.669.4650 fax
gsgilbert@hollandhart.com
jtpearson@hollandhart.com
ectignor@hollandhart.com

*Counsel for Defendant/Counterclaim Plaintiff*
*Consulting by AR, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Ignite Spirits, Inc., a Wyoming corporation,<br><br>            Plaintiff,<br><br>v.<br><br>Consulting by AR, LLC, a Florida limited liability company; Does I through X, inclusive; and Roe Business Entities I through X, inclusive,<br><br>            Defendants. | Case No. 2:21-cv-01590-JCM-EJY<br><br>**CONSULTING BY AR, LLC'S RESPONSE IN OPPOSITION TO COUNTERCLAIM DEFENDANT IGNITE INTERNATIONAL, LTD.'S (I) MOTION TO DISMISS COUNTERCLAIM PURSUANT TO FRCP 12(b)(1), FRCP 12(b)(2), FRCP 12(b)(3), AND 12(b)(6), AND (II) MOTION FOR A MORE DEFINITIVE STATEMENT ON COUNTERCLAIM PURSUANT TO FRCP 12(e)**<br><br>**RELATED ECF NOS. 23, 25**<br><br>**Public [Redacted] Version as Filed on October 7, 2021** |
| Consulting by AR, LLC,<br><br>            Counterclaim Plaintiff,<br><br>v.<br><br>Ignite Spirits, Inc. (f/k/a Ignite Beverages, Inc.); Ignite International Ltd.; and Ignite International Brands, Ltd.,<br><br>            Counterclaim Defendants. | |

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1

1

**PRELIMINARY STATEMENT**

2    Ignite International, Ltd. ("Ignite International") seeks dismissal of Consulting by AR,

3  LLC's ("Company") unjust enrichment counterclaim. Ignite International contends that this Court

4  lacks personal jurisdiction, lacks subject-matter jurisdiction, that the venue is improper, that the

5  Company failed to plausibly allege unjust enrichment, or, in the alternative, that a more definite

6  statement is required. Ignite International's motion is rich with case citations. But its motion lacks

7  any meaningful analysis, is conclusory, and at times, is wrong about the law. Put bluntly, Ignite

8  International's motion is ill-conceived and borders on being frivolous.

9    When accepting as true all factual allegations in the Company's Counterclaims, and after

10 drawing all reasonable inferences in favor of the Company, the Company's Counterclaims are

11 sufficiently alleged, straightforward, and require no more definite statement. The Company alleges

12 that it brokered a strategic marketing and promotional partnership for Ignite with Resorts World

13 Las Vegas, LLC.[1] The Company's negotiations with Resorts World at first centered on the terms

14 sought by Ignite in Exhibit A to a Letter Agreement. But Ignite modified or waived terms of the

15 Letter Agreement by insisting that the Company's manager, Alan Richardson, obtain even more

16 favorable terms for them. And he did. Through his efforts, Richardson obtained more value than

17 Ignite sought originally that yielded at least $4.5 million in additional value to Ignite and could

18 exceed $13 million. Richardson secured an outline proposal from Resorts World, secured a letter

19 of intent from Resorts World, and secured the final definitive agreements. Without the Company,

20 none of this would have materialized for Ignite. Yet Ignite refuses to provide any compensation to

21 the Company, and Ignite International plays coy by claiming that it should have never been named

22 in this lawsuit.

23

24

---

25 [1] For simplicity, and based on how the same representatives of Ignite Spirits, Inc. ("Ignite
   Spirits"), Ignite International, and Ignite International Brands, Ltd. ("Ignite Brands") conflated
26 the various Ignite entities (*see*, *e.g.*, ECF No. 17, ¶¶ 16, 20, 23, 27, 31, 32, 39, 44, 45, 47; ECF
   18–2, ¶ 11 (Ignite Spirits' Complaint references that definitive agreements were "executed
27 between Ignite [Spirits] and Resorts World," but Ignite International was the counterparty to those
   agreements), Company's Counterclaims refer to Ignite Spirits, Ignite International, and Ignite
28 Brands together as "Ignite" or "Counterclaim Defendants." (*See* ECF No. 17, at 7:5.)

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

2

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1    Ignite International's affiliate, Ignite Spirits, brought this anticipatory lawsuit seeking a

2    judicial declaration that the Letter Agreement is "no longer valid or enforceable." Because of the

3    relief sought by Ignite Spirits, the Company brought compulsory counterclaims against Ignite

4    Spirits, Ignite Brands, and Ignite International. If this Court finds that the Letter Agreement is not

5    enforceable, the Company alleges that it would be unjust and inequitable for Ignite International

6    to retain the benefits provided by the Company (i.e., the strategic marketing and promotional

7    partnership with Resorts World) without compensating the Company for the value of its services.

8    Still, Ignite International contends that it did not avail itself to this jurisdiction. This is simply

9    dishonest. Ignite International *signed* the letter of intent and final definitive agreements, all of

10   which were brokered and secured by the Company. The subject transactions are governed by

11   Nevada law, were negotiated in Nevada, and require performance mainly in Nevada. Although

12   Ignite International is incorporated in Wyoming and headquartered in California, it markets, sells,

13   and services its products in Nevada. And Ignite International neglected to inform this Court that it

14   has been registered to do business in Nevada for over three years, and routinely provides its Nevada

15   attorney's address on Secretary of State filings in Nevada and Wyoming, and provides that same

16   address on its contracts, including the definitive agreements the Company brokered here. For these

17   reasons and those below, Ignite International's motion should be denied.

18                                          **BACKGROUND**

19   **A.    The Parties**

20        Counterclaim plaintiff Company is a Florida limited-liability company. (ECF No. 17,

21   ¶ 1.) Its sole member and manager, Alan Richardson, permanently resides in Miami-Dade County,

22   Florida. (ECF No. 17, ¶ 1; ECF No. 18–8.)

23        Counterclaim defendants Ignite Spirits and Ignite International are Wyoming corporations

24   headquartered in California. (ECF No. 17, ¶¶ 2–3; ECF No. 18–7; Exhibit B-2, at Opp. MTD 044–

25   047.) Ignite Spirits and Ignite International are wholly-owned subsidiaries of counterclaim

26   defendant Ignite Brands, a publicly traded British Columbia corporation headquartered in

27   Vaughan, Ontario. (ECF No. 17, ¶ 4.) Ignite is a global consumer-packaged-goods company,

28   operating in the premium product segment of the market. (ECF No. 17, ¶ 13.) Its product categories

3

include nicotine and synthetic vape products, performance drinks named ZRO, spirits featuring vodka, and apparel. (ECF No. 17, ¶ 13.) Ignite Brands is led by Dan Bilzerian, its Chairman and CEO. (ECF No. 17, ¶ 5.) Dan Bilzerian is also a member of the board of directors of Ignite International. (ECF No. 17, ¶ 5.) John Schaefer is the President of Ignite Spirits and Ignite International, and he is the President and COO of Ignite Brands. (ECF No. 17, ¶ 6.)  Schaefer is also a member of the board of directors of Ignite Spirits. (ECF No. 17, ¶ 6.)

**B.    The Company Brokers a Lucrative Strategic Marketing and Promotional Partnership for Ignite with Resorts World**

In or about January 2021, the Company's managing member, Richardson, approached Dan Bilzerian—someone he has known for over 15 years—offering to broker a strategic marketing and promotional partnership for Ignite with Resorts World Las Vegas, LLC ("Resorts World"), which was the first new resort to be completed on the Las Vegas Strip since the Cosmopolitan. (ECF No. 17, ¶¶ 9, 15.) Based on the publicity surrounding the long-awaited opening of Resorts World, Richardson thought that Ignite and Resorts World could be a natural fit: Resorts World would benefit from Dan Bilzerian's social media follower-network, and Ignite would immediately obtain exposure and recognition for being linked to a new multi-billion-dollar resort on the Las Vegas Strip, something critical for Ignite because of its lack of exposure in the resort and casino industry. (ECF No. 17, ¶¶ 5, 14–15.) Dan Bilzerian was interested and introduced Richardson to David Bell so that they could continue to discuss Richardson's proposal. (ECF No. 17, ¶ 15.) David Bell was held out as one of Ignite's consultants for the transactions addressed in this lawsuit. (ECF No. 17, ¶ 8.)

On March 11, and after negotiations between Richardson, Bell, Dan Bilzerian, and Paul Bilzerian, the Company entered into a Letter Agreement with Ignite Spirits and Ignite Brands. (ECF No. 17, ¶ 16.) Richardson signed the Letter Agreement on behalf of the Company. (ECF No. 17, ¶ 16.) Schaefer signed as "President," which Richardson understood was on behalf of Ignite Spirits and Ignite Brands. (ECF No. 17, ¶ 16.) In fact, Ignite Brands is a party, beneficiary, and obligor under the Letter Agreement as evidenced by, among other things, the Letter Agreement, the exhibits to the Letter Agreement, and the Stock Option Plan for Ignite Brands that was provided

4

by Paul Holden, General Counsel for Ignite, to the Company's Nevada counsel. (ECF No. 17, ¶ 16.) After signing the Letter Agreement, Paul Bilzerian offered his "sincere" wish to the Company's counsel that the Letter Agreement "leads to great success for Alan [Richardson], Ignite, and Resorts World." (ECF No. 17, ¶ 16.)

The Letter Agreement provides that if a definitive agreement with Resorts World containing substantially most of the terms set forth in Exhibit A to the Letter Agreement is signed by July 1, 2021, the Company will receive as compensation, among other things, shares of Ignite Brands' stock and certain stock options granted by Ignite Brands. (ECF No. 17, ¶¶ 17, 18.) Although the Letter Agreement provides that the definitive agreement with Resorts World must be signed by July 1, the Letter Agreement lacks a time-of-the-essence provision. (ECF No. 17, ¶ 17.) In fact, the July 1 date was simply a target date that was loosely tied to the various celebrations planned for the Resorts World's grand opening and related events. (ECF No. 17, ¶ 17.) The parties never had discussions about the significance of that date. (ECF No. 17, ¶ 17.)

Over the next several months, Richardson brokered the strategic marketing and promotional partnership for Ignite with Resorts World. (ECF No. 17, ¶ 19.) Although Richardson's discussions with Resorts World at first centered on the terms sought by Ignite in Exhibit A to the Letter Agreement, Ignite began modifying or waiving terms of the Letter Agreement by insisting that Richardson obtain even more favorable terms for them. (*See, e.g.*, ECF No. 17, ¶¶ 20–21, 32.) Each time Ignite moved the goal post, Richardson delivered. (*See, e.g.*, ECF No. 17, ¶¶ 22, 23, 36– 37, 41.)  Richardson *secured* an outline proposal from Resorts World meant to facilitate a letter of intent (ECF No. 17, ¶ 19), he *secured* a letter of intent that was signed by Ignite International and Resorts World (ECF No. 17, ¶¶ 23–25, 28), and he *secured* the final agreements—a Retail Pop-Up Space License Agreement and a Strategic Marketing Alliance Agreement ("Agreements")— between Ignite International and Resorts World (ECF No. 17, ¶ 40–41). Through his extensive efforts, Richardson obtained more value than Ignite sought originally that yielded at least $4.5 million in additional value to Ignite and could exceed $13 million. (ECF No. 17, ¶ 41.) Without the Company's efforts, the Agreements would have never materialized for Ignite. (ECF No. 17, ¶¶41,  66, 77.) It was acknowledged by Schaeffer, "I think [Resorts World] did an amazing job

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1   and it was a great opening. I thought we showed up well and **_truly appreciate you [i.e.,_**
2   **_Company/Richardson] making it all happen for us [i.e., Ignite]_**." (ECF No. 17, ¶ 36.)

3   **C.      No Compensation is Provided to the Company**

4          Despite the Company's extensive efforts resulting in brokering a deal of significant value
5   for Ignite, the Company has never received any of its earned compensation, including Ignite
6   Brands' stock and stock options. (ECF No. 17, ¶ 43.) Rather, Ignite, through Paul Bilzerian and
7   Bell, began a schizophrenic approach of orchestrating a litigation-driven narrative by creating false
8   issues and conditions designed to excuse Ignite from honoring its contractual obligations to the
9   Company. (ECF No. 17, ¶ 43.) While Paul Bilzerian and Bell were creating their narrative,
10  Schaefer told Richardson that the Letter Agreement would be honored by Ignite. (ECF No. 17,
11  ¶ 45.)

12  **D.      This Litigation**

13         On August 13, the Company made a formal demand for payment on Ignite. (ECF No. 17,
14  ¶ 47.) In response to that demand, Ignite Spirits brought an anticipatory declaratory judgment
15  action against the Company. (ECF No. 17, ¶ 48.) In its Complaint, Ignite Spirits seeks a judicial
16  declaration that: (a) the Company breached a Letter Agreement dated March 11, 2021 (ECF No.
17  18–2, ¶ 25); (b) Ignite Spirits "has no further obligation" under the Letter Agreement (ECF No.
18  18–2, ¶ 26); and (c) the Letter Agreement "is **_no longer valid or enforceable_** as a result of [the
19  Company's] breach" (ECF No. 18–2, ¶ 27 (emphasis supplied)).

20         The Company removed the case (ECF Nos. 1, 18), and later filed its Counterclaims against
21  Ignite Spirits, Ignite Brands, and Ignite International. The Company's Counterclaims all arise from
22  the same set of operative facts relating to Ignite Spirits' Complaint—i.e., the operative facts
23  relating to the Company brokering a significant strategic marketing and promotional partnership
24  for Ignite with Resorts World, and Ignite's refusal to provide any form of compensation to the
25  Company. For the Company's unjust enrichment claim, the Company named all Counterclaim
26  Defendants, including Ignite International, because Ignite International signed the Agreements that
27  the Company brokered, and it would be unjust for Ignite International to retain the benefits without
28  providing compensation to the Company for the value of its services. (ECF No. 17, ¶¶ 28, 38, 40,

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

76–77.)

## <u>ARGUMENT</u>

### A.    This Court Has Jurisdiction Over Ignite International

Ignite International fails to apply the Ninth Circuit framework for determining whether personal jurisdiction exists. It simply contends, with no evidentiary support, that it "never consented to jurisdiction in this matter in Nevada," and that the Company's "theories of liability against . . . Ignite International are not compulsory." (ECF No. 23, at 6:23–27.) When dismissal is sought for lack of personal jurisdiction, a counterclaim plaintiff has the initial burden of showing that jurisdiction is appropriate. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). When a motion is based on written materials instead of an evidentiary hearing, a counterclaim plaintiff can meet that burden with only a prima facie showing of jurisdictional facts. *Id*. This means that uncontroverted allegations in the Company's Counterclaims must be taken as true, and factual disputes must be resolved in the Company's favor. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010).

To establish that personal jurisdiction over Ignite International is proper, the Company must show that (a) Nevada's long-arm statute confers personal jurisdiction over Ignite International, and (b) that the exercise of jurisdiction follows the constitutional principles of due process. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). Because Nevada's long-arm statute grants courts jurisdiction over persons "on any basis not inconsistent with" the U.S. Constitution, the jurisdictional analyses under state law and federal due process are identical. *Walden v. Fiore*, 571 U.S. 277, 283 (2014); NRS 14.065(1). When, as here, the counterclaim defendant is not a resident of the forum state, the Court must determine whether that counterclaim defendant has "certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden*, 571 U.S. at 283 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Applying the *International Shoe* test, courts have recognized two types of personal jurisdiction—general and specific. General jurisdiction exists when the defendant's contacts with the forum state are systematic and pervasive, in which case jurisdiction may be asserted even if

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

7

the dispute is unrelated to the contacts with the forum state. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). When contacts are more limited and insufficient to permit general assertion of jurisdiction, jurisdiction may be properly asserted only where the dispute relates directly to those limited contacts. *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993).

### 1. Specific Jurisdiction Exists Over Ignite International

A court may exercise specific jurisdiction over a counterclaim defendant if its less-substantial contacts with the forum give rise to the claim or claims pending before the court—that is, if the cause of action "arises out of" or has a substantial connection with those contacts. *Hanson v. Denckla*, 357 U.S. 235, 250–53 (1958); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("Specific jurisdiction, on the other hand, depends on an 'affiliatio[n]' between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.") (alteration in original).

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident counterclaim defendant 'focuses on the relationship among the [counterclaim] defendant, the forum, and the litigation.'" *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Magazine, Inc.*, 456 U.S. 770, 775 (1984)). In the Ninth Circuit, three requirements must be met for a court to exercise specific jurisdiction over a nonresident counterclaim defendant:

> (1) the non-resident [counterclaim] defendant must purposefully direct [its] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avails [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one [that] arises out of or relates to the [counterclaim] defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018). The Company bears the burden of satisfying the first two prongs; if it does so, the burden then shifts to Ignite International to set forth a "compelling case" that the exercise of jurisdiction is unreasonable. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (internal quotation marks omitted).

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

**a)    Ignite International purposefully availed itself of the forum**

For unjust enrichment claims, courts assess whether the counterclaim defendant has purposefully availed itself of the forum. *Grassmueck v. Bishop*, No. CV-09-1257-HU, 2010 U.S. Dist. LEXIS 43685, at * 2-4 (D. Or. April 5, 2010) (applying the purposeful availment analysis to an unjust enrichment claim). Under the purposeful-availment test, a counterclaim plaintiff must only show that "the [counterclaim] defendant has taken deliberate action within the forum state." *Freestream Aircraft (Bermuda) Ltd.*, 905 F.3d at 604.

Ignite International, through its representatives Dan Bilzerian, Paul Bilzerian, Bell, and Schaefer "deliberately 'reach[ed] out beyond'" its home state to engage and work with the Company knowing full well that the Company brokering the strategic marketing and promotional partnership for Ignite with Resorts World would entail regular contacts with Nevada. *Burger King Corp. v. Rudzewic*, 471 U.S. 462, 479 (1985). The Agreements brokered by the Company, and signed by Ignite International, are governed by Nevada law, contain a Nevada forum-selection clause, contain a consent of personal jurisdiction by Ignite International, and require Ignite International to perform its obligations in Nevada. (Exhibit A-1, at Opp. MTD 013, 016–018, 036.) All in-person meetings relating to the subject transactions occurred in Nevada, and the phone calls, emails, and text messages between Richardson and representatives of Ignite International, focused on the Company's efforts securing a lucrative strategic marketing and promotional partnership for Ignite with Resorts World that would allow Ignite to, among other things, obtain exposure and recognition for being linked to a new multi-billion-dollar resort located on the Las Vegas Strip. (Exhibit A, ¶¶ 6–7 at MTD 002–003.) These communications along with Ignite International's extensive contacts with Nevada, are more than sufficient to satisfy the minimum contacts required under the due process clause. *See, e.g.*, *T.M. Hylwa, M.D., Inc. v. Palka*, 823 F.2d 310, 314 (9th Cir. 1987) (defendant was subject to personal jurisdiction when he "purposefully engaged in a business relationship with a California employer," and his contacts with the forum were largely nonphysical); *Hall v. LaRonde*, 56 Cal. App. 4th 1342, 1344, 1347 (1997) (personal jurisdiction attaches when a non-resident defendant reaches out into the forum in a search for business, and "that the use of electronic mail and the telephone by a party in another state may establish sufficient

9

1  minimum contacts with California to support personal jurisdiction"). Thus, the first prong of the

2  specific jurisdiction analysis is met as Ignite International purposefully availed itself of the forum

3  through its conscious effort to operate in the Nevada market.

4          **b)      The Company's unjust enrichment claim arises out of or is related to**
               **Ignite International's forum-based contacts**

5

6          To satisfy the second prong of the specific-jurisdiction analysis, "there must be 'an

7  affiliation between the forum and the underlying controversy, principally [an] activity or an

8  occurrence that takes place in the forum State and is therefore subject to the State's regulation."

9  *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco County*, 137 S. Ct. 1773, 1780

10  (2017). In the Ninth Circuit, courts rely "on a 'but for' test to determine whether a particular claim

11  arises out of forum-related activities and thereby satisfies the second requirement for specific

12  jurisdiction." *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). The Company's burden in

13  demonstrating that its injury "arises from" Ignite International's forum contacts is not onerous; it

14  need merely show that "a direct nexus exists between those contacts and the cause of action."

15  *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 894 (9th Cir. 1996); *Terracom v.*

16  *Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995) ("The second prong of the specific jurisdiction

17  test is met if 'but for' the contacts between the [counterclaim] defendant and the forum state, the

18  cause of action would not have arisen.").

19          The Company exclusively brokered the deal in Nevada, including having extensive in-

20  person meetings in Nevada, and the Agreements signed by Ignite International, require Ignite

21  International, to perform its obligations in Nevada. The Company's injuries would not have

22  occurred but for Ignite International's (and others) deliberately retaining and accepting the benefits

23  of a lucrative strategic marketing and promotional partnership with Resorts World that was

24  brokered by the Company in Nevada, governed by Nevada law, and requires performance by Ignite

25  International in Nevada. The second prong of the specific jurisdiction analysis is thus satisfied

26  because the Company's unjust enrichment counterclaim arises from Ignite International's

27  meaningful actions in Nevada.

28

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

c)    **Ignite International made no effort to show that the exercise of specific jurisdiction is unreasonable**

Because the Company has established Ignite International's minimum contacts with a forum, Ignite International "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). The Ninth Circuit directs courts to consider seven factors in making this determination: (a) the "extent of the [counterclaim] defendant['s] purposeful injection in the forum state's affairs"; (b) the "burden" of defending in the forum; (c) the "extent," if any, of "conflict with the sovereignty of the defendant's state'" (d) the forum's "interest in adjudicating the dispute"; (e) the most efficient redress of the controversy; (f) "the importance of the forum to the [counterclaim] plaintiff's interest in convenient and effective relief"; and (g) the "existence of an alternative forum." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002). No attempt was made by Ignite International to satisfy its burden of presenting a compelling case that these considerations render jurisdiction unreasonable.

*First*, any burden on Ignite International is minimal at best. *See Burger King*, 471 U.S. at 474 ("[B]ecause 'modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity.") (citation omitted).

*Second*, Nevada has a substantial interest in resolving this dispute. The Company, which brokered a deal governed by Nevada law and requires performance in Nevada, suffered damages at the hand of Ignite International who has "'purposefully derive[d] benefit' from their interstate activities" directed at Nevada. *Burger King*, 471 U.S. at 473 (internal citations omitted).

*Finally*, "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," favors Nevada. *See Trump v. Eighth Judicial Dist. Court*, 109 Nev. 687, 701, 857 P.2d 740, 749 (1993); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1080 (10th Cir. 2008). "Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is

necessary to prevent piecemeal litigation." *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1097 (10th Cir. 1998) (internal citations omitted). Ignite International's affiliate, Ignite Spirits, sued in Nevada. The same witnesses necessary to resolve Ignite Spirits' claims will be deposed for the Company's Counterclaims. Indeed, the Company and its manager, Richardson, dealt with the same individuals no matter what "Ignite hat" was worn to suit their needs. Representatives of Resorts World, all of which are in Nevada, will also be deposed in this lawsuit. Thus, at least most of the wrongs underlying this lawsuit occurred in Nevada, and all of the subject transactions in this lawsuit are governed by Nevada law.

*    *    *    *

In sum, the Company has made its case on the "purposeful availment" and "arises out of" requirements, and Ignite International made no attempt to make a compelling case that jurisdiction is unreasonable. The Court thus has specific jurisdiction over Ignite International.

## 2.    This Court Has General Jurisdiction Over Ignite International

The Company has to show that Ignite International's "contacts with a forum are so substantial, continuous, and systematic that [Ignite International] can be deemed to be 'present' in that forum for all purposes." *Evanston Ins. Co. v. Western Community Ins. Co.*, 13 F. Supp. 3d 1064, 1068 (D. Nev. 2014) (quoting *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007)). "This is an exacting standard . . . because a finding of general jurisdiction permits a [counterclaim] defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Ruhlmann v. Rudolfsky*, No. 2:14-cv-00879-RFB-NJK, 2015 U.S. Dist. LEXIS 130137, at *10 (D. Nev. Sept. 27, 2015) (quoting *Schwarzenegger v. Fred Martin Moto Co.*, 374 F.3d 797, 801 (9th Cir. 2004)).

In applying the test, courts consider "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there," as well as whether the defendant has a bank account, pays taxes, or advertises in the forum. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006). "Longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets are among the indicia of such a

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1   presence." *Id.*

2          Ignite International has had ongoing, substantial business contacts with Nevada, and for

3   it to suggest otherwise is disingenuous. For example, Ignite International signed the Agreements

4   with Resorts World, both of which are governed by Nevada law and require Ignite International to

5   perform its obligations in Nevada. Ignite International's products are sold throughout Nevada,

6   including at Resorts World, MGM properties, and at Terrible Herbst Convenience Stores. (*See*,

7   *e.g.*, Exhibit A-2, at Opp. MTD 038.) Its products are advertised in Nevada. For example, the

8   Company secured a favorable term that requires Resorts World to advertise Ignite's products daily

9   on the West Tower's LED digital screen. (Exhibit A-1, at Opp. MTD 016.)

10          In the Agreements, Ignite International listed its address as 3275 South Jones Blvd., Suite

11   105, Las Vegas, Nevada 89146.[2] (Exhibit A-1, at Opp. MTD 005, 023.) Ignite International has

12   also been registered to conduct business in Nevada since 2018. In its Nevada Secretary of State

13   filings, Ignite International designated KPS Leslie, LLC located at 3275 South Jones Blvd., Suite

14   105, Las Vegas, Nevada 89146 as its registered agent. (Exhibit B-1, at Opp. MTD 041–043.) In

15   its Wyoming Secretary of State filings, Ignite International listed its principal office and mailing

16   address as 3275 South Jones Blvd., Suite 105, Las Vegas, Nevada 89146. (Exhibit B-2, at Opp.

17   MTD 044–047.) Ignite International's trademark, Z-RO, lists its address at 6005 Las Vegas Blvd.

18   South, Las Vegas, Nevada 89119. (Exhibit B-3, at Opp. MTD 048.)

19          Finally, two-years ago, Ignite International released a press release announcing its

20   expansion in Nevada. Its former COO Shannon Bard said that: "The opportunity to bring Ignite to

21   a state like Nevada, which has **long served our company** and Dan, while gaining exposure to this

22   important audience is the perfect platform for the brand's continued development." (Exhibit B-4,

23   at Opp. MTD 049–050 (emphasis supplied).)

24   / / /

25

26

27   ───────────────
     [2] This address is conveniently the office address for Ignite Spirits' and Ignite International's
28   counsel.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

**B.      In the Alternative, Jurisdictional Discovery is Warranted to Determine the Nature and Extent of Ignite International's Business Contacts in Nevada**

Although the Company has made a prima facie showing of Nevada having jurisdiction over Ignite International, if this Court finds that the Company's jurisdictional allegations are not sufficiently developed at this time then jurisdictional discovery on the contacts Ignite International has had with Nevada is appropriate. *See Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). Courts have "a significant amount of leeway in deciding whether to grant [a counterclaim] plaintiff[] leave to conduct jurisdictional discovery while a motion to dismiss is pending." *Life Bliss Fdn. v. Sun TV Network Ltd.*, No. EDCV 13-00393 VAP(SPx), 2013 WL 12132068 (C.D. Cal. Dec. 13, 2013) (citations omitted). Further, "[t]he Ninth Circuit generally has taken a liberal approach with respect to the granting of jurisdictional discovery, noting that it 'should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Id.* at *2 (citing *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (other citations omitted)).

**C.      This Court Has Subject-Matter Jurisdiction Over the Company's Unjust Enrichment Counterclaim**

Ignite International contends that this Court lacks subject-matter jurisdiction over the Company's counterclaim for unjust enrichment because the counterclaim is permissive. (ECF No. 23, at 4–5.)[3] This contention lacks merit because this Court has both supplemental and diversity jurisdiction over the Company's counterclaim for unjust enrichment, and that counterclaim is compulsory.[4]

---

[3] Ignite International also contends that the unjust enrichment counterclaim "deals with a Letter Agreement to which [Ignite International] is not a party or even mentioned within its four corners." (ECF No. 23, at 5.) This argument is nonsensical and has nothing to do with whether this Court has subject-matter jurisdiction over the unjust enrichment counterclaim.

[4] Ignite International references 28 U.S.C. § 1367(b) but provides no analysis on whether subsection (b) applies here. It does not. Section 1367(b) "reflects Congress' intent to prevent original plaintiffs [here, Ignite Spirits]—but not defendants or third parties—from circumventing the requirements of diversity." *ADYB Engineered for Life, Inc. v. Edan Admin. Servs.*, No. 1:19-cv-7800-MKV, 2021 U.S. Dist. LEXIS 59666, at *34 (S.D.N.Y. Mar. 29, 2021) (quoting *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 726–27 (2d Cir. 2000) (citing H.R. Rep. No. 101–734, at 29

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

*First*, whether the Company's counterclaim for unjust enrichment is "permissive" rather than "compulsory" does not affect if this Court should exercise supplemental jurisdiction. Section 1367(a) authorizes federal courts to exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The statute thus "authorizes supplemental jurisdiction coextensive with the 'case or controversy' requirement of Article III." *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995). This jurisdiction extends "to the limits of Article III—which means a loose factual connection between claims can be enough." *Channell v. Citicorp Nat. Servs., Inc.*, 89 F.3d 379, 385 (7th Cir. 1996) (internal quotation marks and alteration omitted). In other words, whether the counterclaim is compulsory or permissive is not determinative; what matters is whether the counterclaim has at least a "loose factual connection" to the plaintiff's claims. *Id*.

The Company's counterclaims, including its counterclaim for unjust enrichment, easily clear this threshold. Ignite Spirits brought a declaratory action claiming that although the Agreements with Resorts World were signed, Ignite Spirits has no further obligations under the Letter Agreement because the Company breached that agreement. (*See* ECF No. 18–2, ¶¶ 11, 25–26.) Ignite Spirits also seeks a judicial declaration that the Letter Agreement "is ***no longer valid or enforceable*** as a result of [the Company's] breach." (*See* ECF No. 18–2, ¶ 27 (emphasis supplied).) The Company disagrees, and contends that it has a right to receive its compensation or the value of such compensation under the Letter Agreement. (*See* ECF No. 17, ¶¶ 50–74.) The Company also contends that if the Letter Agreement is not enforceable—a judicial declaration sought by Ignite Spirits—that it would be unjust and inequitable for Ignite International and others to retain the benefits provided to them (i.e., the Agreements brokered by the Company) without payment or compensation of the value to the Company. (ECF No. 17, ¶¶ 75–78.) The

---

(1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6875)); *see State Nat'l Co. v. Yates*, 391 F.3d 577, 580 (5th Cir. 2004). "Because defendants are involuntarily brought into court, their [claims a]re not deemed as suspect as those of the plaintiff, who is master of his complaint." *Viacom Int'l, Inc.*, 212 F.3d at 727 (citations omitted). Thus, although diversity exists, Section 1367(b) does not apply to the Company's Counterclaims.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

Company's unjust enrichment counterclaim puts at issue the extensive efforts by the Company to provide an even more lucrative strategic marketing and promotional partnership for Ignite with Resorts World, Ignite's post-signing of the Letter Agreement conduct, including having Ignite International sign the Letter of Intent and Agreements, and that the Agreements would have never materialized without the Company. These facts, which will continue to be developed, must be presented for this Court to fully resolve all claims—i.e., Ignite Spirits' request for judicial declarations, and the Company's Counterclaims. In fact, these facts satisfy even a stricter nexus requirement, and they are more than enough to satisfy Section 1367's actual requirement of a "loose factual connection" to Ignite Spirits' request for a judicial declaration. *See Painter v. Atwood*, No. 2:12-cv-1215-JCM-RJJ, 2013 U.S. Dist. LEXIS 77451, at *8 (D. Nev. May 29, 2013) (finding "a sufficient connection between the claims giving rise to original jurisdiction and the counter claims to exercise supplemental jurisdiction" due to "a loose factual connection between claims"); *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) (finding supplemental jurisdiction where both claims and counterclaims "originate from Plaintiffs' decisions to purchase Ford cars."); *Crawford v. Equifax Payment Servs., Inc.*, No. 97 C 4240, 1998 WL 704050, at *6 (N.D. Ill. Sept. 30, 1998) (a counterclaim testing validity of debt under state law is "loosely factually connected" to claim under Fair Debt Collection Practices Act on same debt even though "the evidence which would establish or defeat" the counterclaim was different from plaintiff's claim); *cf. State Nat. Ins. Co. Inc. v. Yates*, 391 F.3d 577, 579 (5th Cir. 2004) (noting that § 1367 "grants supplemental jurisdiction over other claims that do not independently come within the jurisdiction of the district court but form part of the same Article III 'case or controversy.'").

Moreover, courts applying Section 1367 often ask whether a claimant "would . . . ordinarily be expected to try all the claims under consideration in a single proceeding." *NatureSweet, Ltd. v. Mastronardi Produce, Ltd.*, No. 3:12-CV-1424-G, 2013 WL 460068, at *6 (N.D. Tex. Feb. 6, 2013); *see also Painter*, No. 2:12-cv-1215-JCM-RJJ, 2013 U.S. Dist. LEXIS 77451, at *8 ("When considering judicial economy, convenience and fairness to litigants, the court finds these claims warrant adjudication in a single action.") (internal citations omitted). The answer here is a resounding yes. Had the Company brought suit seeking either specific performance or

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

damages arising from its extensive efforts obtaining a lucrative strategic marketing and promotional partnership for Ignite with Resorts World, it logically would have brought all claims, including alternative theories such as an unjust enrichment claim against Ignite Spirits, Ignite Brands, and Ignite International. Thus, although the legal theories may differ, the evidence necessarily presented will be the same and thus there are likely to be gains in judicial efficiency from including all claims in one proceeding. *Id*.

*Second*, even if determining whether a counterclaim is permissive or compulsory is the test for supplemental jurisdiction, the Company's unjust enrichment counterclaim is compulsory when applying the Ninth Circuit's "logical relationship test." A logical relationship exists here because the Company's counterclaim for unjust enrichment plainly "arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013) (citation omitted).[5]

*Third*, the Court also has subject-matter jurisdiction over the Company's unjust enrichment claim under 28 U.S.C. § 1332, because complete diversity exists and the amount of controversy exceeds $75,000, exclusive of interest and costs. The parties are diverse because the Company is a citizen of Florida, counterclaim defendants Ignite International and Ignite Spirits are citizens of California and Wyoming, and counterclaim defendant Ignite Brands is a citizen of British Columbia, Canada. (ECF No. 17, ¶¶ 1–4; ECF No. 18–7; ECF No. 18–8; Exhibit B-2, at Opp. MTD 044–047.)

---

[5] Ignite International's question of why the Company's claims are counterclaims and not a third-party claims is easily addressed; it would be improper to bring these claims as a third-party complaint. Rule 14 governs third-party practice, and establishes that a defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. Third-party complaints are limited to contribution and indemnity. But "[a] counterclaim is any suit brought by a defendant against the plaintiff, including claims properly joined against the plaintiff." *Mace Sec. Int'l, Inc. v. Odierna*, No. 08-60778, 2008 U.S. Dist. LEXIS 62112, at *8 (S.D. Fla. Aug. 14, 2008) ("[A] defendant may join additional parties to a counterclaim as counter-defendants even though they are not original plaintiffs.") (citations omitted).

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1    The $75,000 jurisdictional threshold is also met. On a full and fair reading of the

2  Company's Counterclaims, including the Company's counterclaim of unjust enrichment, the

3  Company is seeking damages that far exceed the $75,000 jurisdictional threshold. The proper

4  measure of damages in unjust enrichment or quantum meruit suits is the "reasonable value of [the]

5  service." *Flamingo Realty v. Midwest Dev.*, 110 Nev. 984, 987, 879 P.2d 69, 71 (1994) (quoting

6  *Morrow v. Barger*, 103 Nev. 247, 252, 737 P.2d 1153, 1156 (1987)). If the Letter Agreement is

7  not enforceable, which Ignite Spirits seeks as a judicial declaration, the Company pled a claim for

8  unjust enrichment and will seek, at a minimum, the value of its services which is no less than CA$2

9  million. (Exhibit A, ¶ 9 at Opp. MTD 003.)

10  **D.    This District is the Appropriate Forum for this Litigation**

11    Ignite International with no evidentiary support, much less any analysis, contends that it

12  is not a party to the Letter Agreement and thus did not choose to litigate in this venue. (ECF No.

13  25, at 7.) It is well established, though, when venue is proper for the plaintiff's original claims and

14  additional claims are asserted as counterclaims or cross-claims, a venue objection is unavailable.

15  *See Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1142 n.17 (N.D. Cal. 2003) (citing

16  *Bredberg v. Long*, 778 F.2d 1285, 1288 (8th Cir.1985)). Ignite Spirits brought this action in the

17  Eighth Judicial District Court, the Company properly removed this action, and this District is the

18  appropriate venue for the various claims to be heard.

19    Even if venue can be challenged, Ignite International failed to satisfy its burden of showing

20  that this District is not appropriate. "Because improper venue is an affirmative defense, the burden

21  of proving lack of proper venue remains—at all times—with the defendant." *Healthcare Servs.*

22  *Grp v. Skyline Servs. Grp.*, No. 17-2703, 2018 U.S. Dist. LEXIS 15843, at *14 (E.D. Pa. Jan. 30,

23  2018) (quoting *Great W. Mining & Min. Co. v. ADR Options, Inc.*, 434 F. App'x 83, 86 (3d Cir.

24  2011) (citation omitted)). When deciding a motion to dismiss for improper venue, the court

25  "accept[s] as true all of the allegations in the complaint, unless those allegations are contradicted

26  by the defendants' affidavits." *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d

27  Cir. 2012) (citing *Pierce v. Shorty Small's of Branson, Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998)).

28  But even when the Court considers affidavits and other evidence outside the pleadings, the Court

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

must draw all reasonable inferences and resolve all factual disputes in favor of the non-moving party. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

When jurisdiction is based on diversity of citizenship, venue is governed by 28 U.S.C. § 1391(a). This statutory provision provides:

> [a] civil action wherein jurisdiction is founded only on diversity of citizenship may … be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Section 1391(a)(2) is the applicable provision here. For venue to be proper within this District under Section 1391(a)(2), a "substantial part" of the events supporting this suit must have occurred in Nevada.

The Court need not "determine the 'best' forum, or 'the forum with the most substantial events.'" *SKF USA Inc. v. Okkerse*, 992 F. Supp. 2d 432, 446 (E.D. Pa. 2014). "The test for determining venue is not the [counterclaim] defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). For example, **s**ubstantial events include not only the location where negotiations and execution of a contract occurred but also the place where the contract was intended to be performed and the place where the alleged breach occurred. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005); *see also Shropshire v. Fred Rappoport Co.*, 294 F. Supp. 2d 1085, 1094 (N.D. Cal. 2003). As described above, a substantial part of the events supporting the Company's Counterclaims occurred in Nevada, and Ignite International made no effort to satisfy its burden.[6] Thus, when accepting as true the factual allegations in the Counterclaims, this District is the appropriate venue.

---

[6] Ignite International contends that the Company's Counterclaims are "silent as to venue, and only states that events or omissions arose in this District." (ECF No. 23, at 4.) But "it is not necessary for [the Company] to include allegations showing the venue to be proper." *Myers v. American Dental Assoc.*, 695 F.2d 716, 724 (3d Cir. 1982) (quoting Fed. R. Civ. P. Form 2, Advisory Committee note 3). Rather, Ignite International carries the burden of proving the affirmative defense of improper venue. *Id.* (citations omitted).

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

**E.    The Company Plausibly Alleges an Unjust Enrichment Counterclaim**

Rule 8(d)(2)–(3) permits "[a] party [to] set out 2 or more statements of a claim or defense alternatively or hypothetically," and "state as many separate claims . . . as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(2)–(3). This includes simultaneous claims for breach of contract and unjust enrichment. *See Marquis Aurbach Coffing, P.C. v. Dorfman*, No. 2:15-cv-00701-JCM-NJK, 2015 U.S. Dist. LEXIS 142403, 2015 WL 6174346, at *4 (D. Nev. Oct. 20, 2015) ("[A] party may state a claim for breach of contract, premised on the existence of a valid contract, and state a claim for unjust enrichment, premised on the nonexistence of a valid contract."). To state a claim for unjust enrichment against Ignite International, the Company need only plausibly allege it conferred a benefit on Ignite International, Ignite International appreciated the benefit, and Ignite International's retention of the benefit without payment would be inequitable. *Certified Fire Prot. Inc. v. Precision Constr.*, 128 Nev. 371, 381, 283 P.3d 250, 257 (2012).[7]

Ignite International spills substantial ink arguing that the Company's "death knell is that it failed to plead an alter ego theory, or one for indemnification, or even attempt to allege any relationship between . . . Ignite International and the other counterclaim defendants." (ECF No. 23, at 9.) Ignite International also argues that the Company "has wholly failed to allege facts that support any attempt to pierce the corporate veil." (ECF No. 23, at 9.) Ignite International's argument is odd because the Company is not trying to pierce the corporate veil, nor does it need to pierce the veil to bring its unjust enrichment counterclaim. The Company is not asking this Court to treat Ignite Spirits/Ignite Brands and Ignite International "as one for purposes of determining liability." *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1490 (9th Cir. 1983). Rather, the Company alleges that it would be unfair and inequitable for Ignite, which includes Ignite International, to retain the benefits provided to them (i.e., the Agreements)

---

[7] "A claim has facial plausibility when the [counterclaim] plaintiff pleads factual content that allows the court to draw the reasonable inference that the defense is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless the deficiencies of the counterclaim cannot be cured by amendment. *DeSota v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Although the Company's Counterclaims are sufficiently pled, if this Court disagrees, the Company requests leave to amend to address any deficiencies with its pleading.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

without payment or compensation of value to the Company. (ECF No. 17, ¶ 77.) Put another way, it would be unjust for Ignite to receive a lucrative strategic marketing and promotional partnership with Resorts World that was brokered exclusively by the Company, and would have never materialized without the Company, without some form of compensation being paid to the Company. (ECF No. 17, ¶¶ 15, 19, 29, 33, 35–36, 40–41, 66, 76–77.) The Company named Ignite International as a counterclaim defendant because Ignite International signed the Letter of Intent and the Agreements, all of which the Company brokered. (ECF No. 17, ¶¶ 28, 40–41; Exhibit A-2, at Opp. MTD 005–037.) This fact was conveniently left out by Ignite International in its motion. Nothing in Nevada law precludes unjust enrichment claims under these circumstances.

## F.    Company's Counterclaims are Intelligible

"Rule 12(e) is designed to strike at unintelligibility, rather than want of detail." *Russell Road Food & Beverage, LLC v. Galam*, No. 2:13-cv-0776-JCM-NJK, 2013 U.S. Dist. LEXIS 177415, at *7 (D. Nev. Dec. 17, 2013). Given the liberal nature of the federal pleading standards, Rule 12(e) motions are "disfavored and rarely granted." *Millenium Drilling Co. v. Beverly House-Meyers Recoavable Tr.*, No. 2:12-cv-00462-MMD-CWH, 2013 U.S. Dist. LEXIS 69716, at *8 D. Nev. May 16, 2013) (quoting *Sagan v. Apple Comput.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994)). "Courts will deny the motion if the complaint is specific enough to give notice to the defendants of the substance of the claim asserted." *Id.* at *7. "A Rule 12(e) motion should be granted only if the complaint is 'so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself.'" *Id.* (quoting *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999)).

Ignite International contends that it cannot adequately respond to the Company's unjust enrichment counterclaim without more definite allegations because the Company "fails to even reference [Ignite International] . . . except for paragraph 3," and "attempts to ham-handedly define Ignite International along with the other counterclaim defendants as one party, but then even states that only one of the five counts—count 5—is purportedly against Ignite International." (ECF No. 23, at 12–13.) This is simply not true. To begin, the Company specifically referenced Ignite International multiple times (*see, e.g.*, ECF No. 17, ¶¶ 3–6, 28, 38, and 40), including alleging that

Ignite International signed the Letter of Intent and the Agreements, and only referred the Counterclaim Defendants as Ignite based on those entities' representatives conflating the various Ignite entities. The Company's counterclaim of unjust enrichment is intelligible.

- The Company brokered a strategic marketing and promotional partnership for Ignite with Resorts World. (ECF No. 17, ¶¶ 15, 19, 29, 33, 40.)

- The Company obtained an even more lucrative deal than originally sought by Ignite. (ECF No. 17, ¶ 40.)

- Ignite International retained the benefits of the Company's efforts by signing the Letter of Intent and the Agreements. (ECF No. 17, ¶¶ 40–41, 77.)

- Without the Company, the Agreements would have never materialized for Ignite International. (ECF No. 17, ¶¶ 35–36, 66, 77.)

- If the Letter Agreement is not enforced—a judicial declaration sought by Ignite International's affiliate, Ignite Spirits—it would be unjust and inequitable for Ignite International and others to retain those benefits without providing compensation to the Company. (ECF No. 17, ¶¶ 76–77.)

If Ignite International disagrees, it should just deny the allegations. A more definite statement is not required.

## CONCLUSION

For these reasons, Ignite International's motion to dismiss or for a more definite statement should be denied.

Dated: October 7, 2021          Respectfully submitted,

/s/ *Jon T. Pearson*
Gregory S. Gilbert
Jon T. Pearson
Elody C. Tignor
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada 89134

*Counsel for Defendant/Counterclaim Plaintiff Consulting by AR, LLC*

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1

**CERTIFICATE OF SERVICE**

I certify that on October [●], 2021, an accurate copy of this **Consulting by AR, LLC's Response in Opposition to Counterclaim Defendant Ignite International, Ltd.'s (I) Motion to Dismiss Counterclaim Pursuant to FRCP 12(b)(1), FRCP 12(b)(2), FRCP 12(b)(3), and 12(b)(6), and (II) Motion for a More Definitive Statement on Counterclaim Pursuant to FRCP 12(e), Public [Redacted] Version as Filed on October 7, 2021** was served by electronically delivering a copy to the email addresses below:

Kimberly P. Stein
FLANGAS LAW GROUP
3275 South Jones Blvd., Suite 105
Las Vegas, Nevada 89146
kps@fdlawlv.com

Ryan A. Ellis
RYAN ELLIS LAW CORPORATION
3275 South Jones Blvd., Suite 105
Las Vegas, Nevada 89146
ryan@ryanellislaw.com

/s/ *Jon T. Pearson*
An employee of Holland & Hart LLP

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

23

1

<u>INDEX OF EXHIBITS</u>

| Exhibit | Description | Opp. MTD Page No(s). |
|---|---|---|
| **A** | Declaration of Alan Richardson | 001–003 |
| **A-1** | Email from Paul Bilzerian | 004–037 |
| **A-2** | Text Messages between Dan Bilzerian and Alan Richardson | 038 |
| **B** | Transmittal Declaration of Jon T. Pearson | 039–040 |
| **B-1** | Screenshot from the Nevada Secretary of State website | 041–043 |
| **B-2** | Screenshot and filings from the Wyoming Secretary of State website | 044–047 |
| **B-3** | Screenshot from the U.S. Patent and Trademark Office re: Ignite International Ltd.'s trademark, Z-RO | 048 |
| **B-4** | Press Release from Ignite International, Ltd. | 049–050 |

17517661_v1

Holland & Hart LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134