UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

IGNITE SPIRITS, INC., a Wyoming
corporation,

              Plaintiff,

       v.

CONSULTING BY AR, LLC, a Florida
limited liability company; Does I through X,
inclusive; and Roe Business Entities I through
X, inclusive,

              Defendants.

 

Consulting by AR, LLC,

              Counterclaim Plaintiff,

       v.

IGNITE SPIRITS, INC. (f/k/a Ignite
Beverages, Inc.); IGNITE
INTERNATIONAL LTD.; and IGNITE
INTERNATIONAL BRANDS, LTD.,

              Counterclaim Defendant.

Case No. 2:21-cv-01590-JCM-EJY

**REPORT AND RECOMMENDATION**

**RE: ECF Nos. 39, 40, 52**

Pending before the Court is Counterclaim Defendant Ignite International Brands, Ltd.'s Motion to Dismiss Counterclaim and Motion for More Definitive Statement.[1]  ECF Nos. 39 and 40. The Court has considered Ignite Brands' Motion, Consulting by AR, LLC's Response (ECF No. 47),[2] and Ignite Brands' Reply (ECF No. 49).  Also pending before the Court is Consulting's Motion for Leave to Supplement (ECF No. 52), which the Court has considered along with Ignite Brands' Opposition (ECF No. 53) and Consulting's Reply.  ECF No. 55.

---

[1]     Ignite International Brands, Ltd. is referred to herein as "Ignite Brands," and the Motion to Dismiss and Motion for More Definite Statement are collectively referred to as the "Motion."
[2]     Consulting by AR, LLC is referred to herein as "Consulting."

1

## I.    Background

This case originated when Ignite Spirits, Inc. ("Ignite Spirits") filed a Complaint against Consulting in the Eighth Judicial District Court for the District of Nevada alleging a single declaratory relief claim.  ECF No. 1-2.  Ignite Spirits' Complaint alleges that Consulting breached a contract, the Letter Agreement, entered into by Ignite Spirits and Consulting rendering the Letter Agreement invalid and unenforceable.  *Id*.

The case was removed to federal court by Consulting and, along with its Answer, Consulting filed counterclaims against Ignite Spirits and non-parties Ignite Brands and Ignite International Ltd. ("Ignite International").  ECF Nos. 8 (sealed) and 17 (redacted).  In its Counterclaims, Consulting alleges that: Ignite Spirits and Ignite International are Wyoming corporations with headquarters in Los Angeles County, California; Ignite Brands is a publicly traded British Columbia corporation headquartered in Ontario, Canada; and Ignite Spirits and Ignite International are wholly owned subsidiaries of Ignite Brands.  ECF No. 17 at 7 ¶¶ 2-4.  Consulting further alleges that: (i) venue is proper because a substantial part of the events or omissions giving rise to the Counterclaims occurred in the District of Nevada; (ii) subject matter jurisdiction is proper under 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000; (iii) the District of Nevada "has supplemental jurisdiction over these Counterclaims under 28 U.S.C § 1367"; (iv) the Court has personal jurisdiction over Ignite Spirits, Ignite Brands, and Ignite International because they have transacted and continue to transact business in the State of Nevada; (v) the subject agreements are governed by Nevada law; and, (vi) Ignite Spirits and Ignite Brands contractually agreed to submit to jurisdiction of the state and federal courts sitting in Nevada.

Consulting's five Counterclaims are preceded by 21 pages of factual allegations, but no exhibits are attached.  The Counterclaims include Breach of the Letter Agreement/Specific Performance (Count One), Breach of the Covenant of Good Faith and Fair Dealing (Count Two), Equitable Estoppel (Count Three), Promissory Estoppel—Pled in the Alternative (Count Four), and Unjust Enrichment or Quantum Meruit—Pled in the Alternative (Count Five).  Consulting names Ignite Spirits and Ignite Brands in its operative paragraphs of Counts One through Three (ECF No. 17 ¶¶ 51-56, 58-63, 66), and Ignite Brands in Count Four (*id*. ¶¶ 68-73).  Count Five refers to Ignite

1    Brands and "Ignite" without differentiating among the Counterclaim Defendant entities. *Id*. ¶ 77.

2    Consulting defines Ignite Spirits, Ignite International, Ltd., and Ignite International Brands, Ltd. as

3    "Ignite" in its introductory paragraph to the Counterclaims. *Id*. at 7.

4          The Court reviewed the Letter Agreement (ECF No. 1-6), which states on its face that it is

5    an agreement between Ignite Spirits (formerly known as Ignite Beverages) and Consulting.  The

6    Letter Agreement has only two signatories, neither of which is expressly identified as representing

7    an entity. *Id*.  Consulting alleges that Ignite Brands also "entered into" the Letter Agreement stating,

8    in pertinent part, that "Ignite Brands is a party, beneficiary, and obligor under the Letter Agreement

9    as evidenced by, among other things, the Letter Agreement, the exhibits to the Letter Agreement, and

10   the Stock Option Plan for Ignite Brands that was provided by Paul Holden, General Counsel for

11   Ignite, to … [Consulting's] counsel."  ECF No. 17 at 10 ¶ 16; *see also* ECF No. 47 at 4.[3]  Setting

12   aside the potential arguments regarding whether Ignite Brands is a party to the Letter Agreement,[4]

13   what is clear is that Ignite Brands is not an original plaintiff in this action, and that Consulting seeks

14   to add this entity through its Counterclaims.  ECF Nos. 1-2; 17.

15         In the Counterclaims, Consulting reiterates terms in the Letter Agreement providing that

16   Consulting will receive compensation including "shares of Ignite Brands' stock … if a definitive

17   agreement with Resorts World is signed by July 1, 2021."  ECF No. 17 at 10 ¶ 17.[5]  Each of the

18   Resorts World agreements (there are two) is solely with Ignite International, defined as "Ignite." ECF

19   No. 28-2 at 3, 21.  Neither Consulting nor Ignite Brands is a party to the Resorts World agreements.

20         Consulting argues that if a definitive agreement was signed with Resorts World (irrespective

21   of the date), Consulting was to "receive as compensation *from Ignite Brands* shares of Ignite Brands'

---

22   [3]      Consulting contends that Exhibits B and C to the Letter Agreement demonstrate Ignite Brands acknowledges
23   its status as a party to the Letter Agreement.  ECF No. 47 at 5.  The language relied upon by Ignite Brands is a partial
     quote of the introductory paragraphs of each Exhibit.  The sentence states, in relevant part, that: "[w]hen interpreting the
24   terms and conditions of … [the Exhibit], reference should also be made to a Letter Agreement between the Optionee (as
     defined herein) and the Company dated March 11, 2021 …."  ECF No. 1-6 at 5, 7.  Thereafter, each Exhibit defines
25   Optionee as Consulting and the "Company" as Ignite Brands.  *Id*.  In contrast to the language of these Exhibits, the Letter
     Agreement states in its introductory paragraph that it is a binding agreement between Consulting and Ignite Beverage
26   (fka Ignite Spirits) not Ignite Brands.  *Id*. 1-6 at 2.
     [4]      In its Objection (ECF No. 51) to the Court's prior Order (ECF No. 48), Consulting includes a lengthy footnote
27   (n.3) discussing whether Ignite Brands is a party to the Letter Agreement implying the Court need not have reached this
     issue.  The Court did not reach this issue in its prior Order and does not reach this issue in this Order.  In fact, the Court
28   expressly left and leaves this issue to another day.  Consulting's suggestion to the contrary is misplaced.
     [5]      Resorts World, LLC is a new casino-resort on the Las Vegas Strip.

1    stock and certain stock options granted by Ignite Brands." ECF No. 47 at 5 *citing* ECF No. 17 at 10

2    ¶¶ 17-18 (emphasis in original). Consulting says that despite brokering a significant deal for "Ignite,"

3    Consulting never received the compensation it was due. *Id*. at 6. Consulting further argues that the

4    Court has subject matter jurisdiction over Ignite Brands under 28 U.S.C. § 1332(a)(2) because more

5    than $75,000 is in controversy and Ignite Brands is a Canadian corporation and Consulting is a Florida

6    corporation. ECF No. 17 at 7 ¶¶ 1, 4; ECF No. 47 at 7-8. Consulting further argues that the Court

7    has supplemental jurisdiction over the state law Counterclaims, which Consulting contends are

8    compulsory against Ignite Brands. *Id*.

9    **II.    Discussion**

10        **A.    Jurisdiction**.

11            *1.    Subject Matter Jurisdiction Over Ignite Brands*.

12            In the Counterclaims, Consulting pleads that Ignite Brands "is a for-profit publicly traded

13    British Columbia corporation headquartered in … Ontario" Canada. ECF No. 17 at 7 ¶ 4. Ignite

14    Brands filed a Motion to Dismiss and, hence, has not answered this (or most) allegations averred.

15    Nonetheless, Ignite Brands does not dispute it is a Canadian entity or that Consulting is a Florida

16    limited-liability company run by Alan Richardson, its only member and manager, who resides in

17    Florida. *Id*. at 7 ¶ 1. There also appears to be no dispute that the amount in controversy is greater

18    than $75,000 and that Ignite Spirits and Ignite International are for-profit Wyoming corporations

19    headquartered in Los Angeles County, California. *Id*. at 7 ¶¶ 2 and 3.

20            Consulting never identifies which of the Ignite entities (defined as one entity in its

21    introductory paragraph to the Counterclaims) breached the terms of the Letter Agreement by failing

22    to pay Consulting the compensation it says it is due; however, it is stock in Ignite Brands that

23    comprises the compensation to Consulting. ECF Nos. 1-6 ¶ 2; 17 at 7 ¶¶ 4, 43. Consulting alleges

24    that "Ignite, through Paul Bilzerian and [David] Bell, began a schizophrenic approach of orchestrating

25    a litigation-driven narrative … designed to excuse Ignite from honoring its contractual obligations

26    to" Consulting. ECF No. 17 at 25 ¶ 44. Paul Bilzerian is averred by Consulting to hold no title or

27    position with any of the Counterclaim Defendant entities but to have "actively participated and led

28    the negotiations on behalf of Ignite." *Id*. at 8 ¶ 7. David Bell, averred to be the co-founder of Lean

1    Staffing Solutions and a close associate of Paul Bilzerian, was allegedly "used by Ignite to be a

2    consultant in matters relating to the" Resorts World transactions.  *Id*. at 8 ¶ 8.  Consulting's

3    Counterclaim allegations tie these individuals to a series of acts that make up the supposed

4    schizophrenic approach to litigation.  *Id*. at 26 ¶ 44(a) – 28 ¶ 47.  It is Ignite Spirits for whom

5    Consulting was, at least on the face of the Letter Agreement, to obtain definitive agreements for from

6    Resorts World (ECF No. 1-6 at 1); but it is Ignite International that entered into the agreements with

7    Resorts World.  ECF No. 46 at 3, 21.

8            When the claims at issue are ones over which the Court would exercise supplemental

9    jurisdiction, as is the case with respect to the four Counterclaims asserted against Ignite Brands, the

10    federal statute found at 28 U.S.C. § 1367 must be reviewed.  Subsection (a) of this statute provides:

11    
12    
13    
14    
> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

15    The United States Supreme Court explains that:

16    
17    
18    
19    
20    
> [t]he last sentence of § 1367(a) makes it clear that the grant of supplemental jurisdiction extends to claims involving joinder or intervention of additional parties. The single question …, therefore, is whether a diversity case in which the claims of some plaintiffs satisfy the amount-in-controversy requirement, but the claims of other plaintiffs do not, presents a civil action of which the district courts have original jurisdiction.  If the answer is yes, § 1367(a) confers supplemental jurisdiction over all claims, including those that do not independently satisfy the amount-in-controversy requirement, if the claims are part of the same Article III case or controversy.

21    *Exxon Mobile Corp. v. Allpattah Services, Inc.*, 545 U.S. 546, 558 (2005) (internal quote marks

22    omitted).  Subsection (b) of 28 U.S.C. § 1367 states:

23    
24    
25    
26    
27    
> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28

1    The Court in *Transamerica Life Ins. Co. v. McFarland*, explained that "the limitation of § 1367(b)

2    applies only to *plaintiffs'* efforts to join nondiverse parties" and that "[t]he … purpose of § 1367(b)

3    is to prevent plaintiffs from suing diverse defendants first, then adding claims against nondiverse

4    defendants under the guise of supplemental jurisdiction."   Case No. C10-217RAJ, 2010 WL

5    11566302, at *2 (W.D. Wash. June 3, 2010), *citing United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488,

6    492-93 (4th Cir. 1998) (emphasis in original).

7         Here, there is no dispute that the original parties (Ignite Spirits and Consulting) are

8    completely diverse and the amount in controversy is in excess of $75,000.  Despite Ignite Brands'

9    contention to the contrary (ECF No. 39 at 6-7), the law is clear that Counterclaim Plaintiff

10    (Consulting) and the additional Counterclaim Defendants (Ignite International and Ignite Brands) are

11    completely diverse.   28 U.S.C. § 1332(a)(2); *Nike, Inc. v. Commercial Iberica de Exclusivas*

12    *Deportivas, S.A.*, 20 F.3d 987, 990 (9th Cir. 1994) ("We draw no distinction between corporations

13    incorporated in a state of the United States and those incorporated in a foreign country when

14    determining the corporation's citizenship for purposes of diversity jurisdiction.") (internal citation

15    omitted).  Given this law, and the facts discussed above, the Court finds it can properly exercise

16    subject matter jurisdiction over the completely diverse parties.

17         Ignite Brands' argument that the Court lacks jurisdiction over a "tort" committed outside the

18    United States fails.  Consulting alleges that Ignite Brands is a party to a *contract* governed by the

19    laws of the State of Nevada, and that all events leading to the alleged breach of that *contract* and

20    breach of good faith and fair dealing occurred in Nevada.  Consulting's promissory estoppel claim

21    sounds in contract not torts.  Likewise, unjust enrichment is treated as a contract claim by the State

22    of Nevada.  *Klaizner v. Countrywide Fin.*, Case No. 2:14-cv-1543-JCM-PAL,2015 WL 627,927, at

23    *7 (citing NRS 11.190(2)(c), *In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011).  Finally,

24    with respect to Ignite Brands' assertion that the Court cannot assert supplemental jurisdiction over

25    the tort of equitable estoppel, it does so as a conclusion.  There is no factual analysis offered

26    supporting this conclusion and the case law cited is inapposite.  ECF No. 39 at 6.

27         Based on the foregoing, the Court finds that subject matter jurisdiction is properly exercised

28    over Consulting's Counterclaims asserted against Ignite Brands.

                    2.        *Personal Jurisdiction*.

When a defendant seeks dismissal based on a lack of personal jurisdiction, the plaintiff has the initial burden of showing that the exercise of jurisdiction is appropriate. *Marvix Photo, Inc. v. Brands Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (internal citation omitted). When the motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff meets its burden with a prima facie showing of jurisdictional facts. *Id*. (citation omitted). "The plaintiff cannot simply rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true. We may not assume the truth of allegations in a pleading which are contradicted by affidavit, but we resolve factual disputes in the plaintiff's favor." *Id*. (internal citations, brackets, and quote marks omitted). "If the plaintiff is able to meet its prima facie burden, the movant can nonetheless continue to challenge personal jurisdiction either at a pretrial evidentiary hearing or at trial itself." *Goldsmith v. Sill*, Case No. 2:12-cv-0490-LDG-CWH, 2013 WL 1249707, at *1 (D. Nev. Mar. 26, 2013) (internal citation omitted).

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Marvix Photo*, 647 F.3d at 1223 (internal citation omitted). This is a two part test. "First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute." *Chan v. Soc'y Expeditions*, 39 F.3d 1398, 1404 (9th Cir. 1994). Nevada's long-arm statute, NRS 14.065, reaches the limits of due process set by the United States Constitution; thus, the Court moves to the second part of the test that requires the "exercise of jurisdiction must comport with federal due process." *Id*. at 1404-05. "Due process requires that nonresident defendants have certain minimum contacts with the forum state so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id*. (citing *International Shoe v. Washington*, 326 U.S. 310, 316 (1945)).

Since the Supreme Court decision in *International Shoe*, courts differentiate between general and specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, nn. 8, 9 (1984). A court may exercise general jurisdiction over foreign corporations to hear any and all claims against them when their affiliations with the state are so "continuous and systematic" as to render them essentially at home in the forum state. *International Shoe*, 326 U.S. at 317. Specific

1  jurisdiction depends on an "affiliatio[n] between the forum and the underlying controversy."

2  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  A three-prong test is

3  applied to determine "whether the exercise of specific jurisdiction over an out-of-state defendant

4  comports with due process: (1) the defendant must have "purposefully directed [its] activities at

5  residents" of the forum state; (2) the claim must arise out of or relate to the defendant's activities in

6  the forum state; and (3) the assertion of personal jurisdiction over the defendant must comport with

7  traditional notions of fair play and substantial justice."  *Authentify Patent Co., LLC v. Strikeforce*

8  *Technologies*, 39 F.Supp.3d 1135, 1143 (W.D. Wash. July 31, 2014) (internal citation omitted).

9       Here, Ignite Brands argues that it "did not avail itself to [sic] this jurisdiction and/or no events

10  or omissions have been pled against this Counterclaim Defendant Ignite Brands which rise to the

11  level of such personal jurisdiction."  ECF No. 39 at 4.  Ignite Brands further argues that as a parent

12  entity it cannot be held liable for its subsidiary's actions.  *Id.* at 7-8.  Ignite Brands says the

13  Counterclaims against it are not compulsory.  *Id*. at 8.  In conclusory fashion, Ignite Brands contends

14  none of the wrongs alleged "arise out of anything that occurred or that was to occur in Nevada."  *Id*.

15  Ignite Brands points to the stock promised as compensation as originating in Canada and being issued

16  by a Canadian company.  *Id.* at 9; ECF No. 49 at 5.

17       Because neither Consulting nor Ignite Brands contend general jurisdiction is properly

18  exercised, the Court limits its review to whether there is specific personal jurisdiction over Ignite

19  Brands.

20  **a.    Did Ignite Brands avail itself by engaging in activities in or**
       **creating obligations to Nevada?**

21

22       Purposeful availment occurs when a defendant "deliberately has engaged in significant

23  activities within a State, or has created continuing obligations between himself and residents of the

24  forum."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985) (citations and internal

25  quotation marks omitted).  A single act associated with a forum state may be sufficient "[s]o long as

26  it creates a 'substantial connection' with the forum."  *Id.* at 475 n. 18 (internal quotation marks

27  omitted).  Activities constituting purposeful availment may include "executing or performing a

28  contract" in a forum state.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th

1    Cir.2004); *China Energy Cor. v. Hill*, Case No. 3:13-cv-00562-MMD-VPC, 2014 WL 4633784, at

2    *4 (D. Nev. Sept. 15, 2014).

3            Consulting asserts Ignite Brands is a party to the Letter Agreement in dispute, which must

4    be interpreted under the law of the State of Nevada, and which requires "[a]ny dispute arising

5    therefrom … [to] be resolved by the Courts in the State of Nevada." ECF Nos. 1-6 at 3; 49 at 14.

6    Ignite Brands denies that it is a party to the Letter Agreement and states that it did not consent to

7    Nevada as the forum for any dispute resolution.  Ignite Brands also repeatedly argues that it cannot

8    be held liable for its subsidiary's breach, if any, of the Letter Agreement.  While it is true that a parent

9    entity is not automatically liable for the wrongs of its subsidiaries (*U.S. v. Bestfoods*, 524 U.S. 51, 61

10   (1998)), and that that Consulting avers no facts that would pierce the corporate veil, Consulting seeks

11   to hold Ignite Brands liable in its own right, not based on the parent-subsidiary relationship.  It is

12   these averments that Court considers for purposes

13           Consulting alleges Ignite Brands is a party to the Letter Agreement, which was breached

14   after Consulting fulfilled its obligation and the compensation due from this Counterclaim Defendant

15   was not paid.  Consulting points to Exhibits B and C to the Letter Agreement as demonstrating Ignite

16   Brands' status as a contracting party.  *Supra* n.3.  Consulting further avers, among other things, that

17   Dan Bilzerian is the founder, CEO, and Chairman of the Board of Ignite Brands, and that John

18   Schaefer ("Shaefer"), who signed the Letter Agreement, is the President of Ignite Spirits and Ignite

19   International, and President and COO of Ignite Brands.  ECF No. 17 at 7-8 ¶¶ 5-6.  Consulting

20   contends that Schaefer, Dan Bilzerian, and Bilzerian's father (Paul Bilzerian), acting collectively on

21   behalf of Ignite Brands and its co-Counterclaim Defendants, made representations to Consulting,

22   engaged in substantial activity in and connected to Nevada, leading to reaping the benefits of contracts

23   with Resorts World (located in Nevada), while ultimately failing to fulfill the obligations of the Letter

24   Agreement.  *Id*. at 7, 8, 10, 11-14, 17, 19, 27 ¶¶ 5, 6, 16, 19, 20, 21, 24, 25, 33, 35, 36, 37, and 45.

25   Ignite Brands' averment that none of the acts alleged against Ignite Brands arise out of anything that

26   occurred in Nevada is belied by the above-cited substantial countervailing facts.

27           Indeed, while Ignite Brands generally attacks the Counterclaims' jurisdictional, venue, and

28   pleading problems, Consulting's numerous factual allegations in support of the contention that Ignite

1    Brands purposefully availed itself of the State of Nevada go largely unanswered with the exception

2    of denying Ignite Brands is party to or bound by the Letter Agreement.  *Id*. compare ECF Nos. 39 at

3    8; 49 at 10-11.   Statements by Ignite Brands that it did not file the original action, that the

4    Counterclaims do not allege federal question jurisdiction, and that it is a Canadian corporation do not

5    change the Court's analysis.  *Id*.  Consulting's allegations include sufficient prima facie jurisdictional

6    facts to establish purposeful availment.

7              **b.      Do Consulting's claims arise out of or relate to Ignite Brands'**
                         **activities in Nevada?**
8

9         The Ninth Circuit has established a "but for" test to determine whether claims arise out of

10   forum related activity.  *Ballard v. Savage*, 65 F.3d 1495, 1500 (1995)(citing *Shute v. Carnival Cruise*

11   *Lines,* 897 F.2d 377(9th Cir.1990), *rev'd on other grounds*, 499 U.S. 585 (1991)).  Here, Consulting

12   must show that its claims could not have arisen "but for" Ignite Brands' contacts with Nevada.  *Id.*

13   Consulting asserts sufficient prima facie jurisdictional facts alleging that but for promises made by

14   Ignite Brands to compensate Consulting for its successful activities in the State of Nevada relating to

15   negotiating and securing agreements with Resorts World, benefitting all three Ignite Counter

16   Defendants, Consulting would not be asserting causes of actions against Ignite Brands.  Consulting

17   further alleges that Ignite Brands, through its representatives, was directly involved in directing

18   Consulting's activities in Nevada and negotiating terms of contracts to be performed in Nevada.  *See*

19   citation in II (A)(2)(a) immediately above.  These factual allegations are sufficient to establish prima

20   facie jurisdiction facts supporting personal jurisdiction.

21             **c.      Would the exercise of personal jurisdiction comport with fair play**
                         **and substantial justice?**
22

23        Determining whether an exercise of personal jurisdiction would comport with fair play and

24   substantial justice the Court considers (i) the burden on the defendant, (ii) the forum's interest in

25   adjudicating the dispute, (iii) the plaintiff's interest in obtaining convenient and effective relief, (iv)

26   the interstate judicial system's interest in obtaining the most efficient resolution of the controversies,

27   and (v) the shared interests of the states in further substantive social policies.  *Burger King Corp.*,

28   471 U.S. at 477.

1    Ignite Brands does not address the above test but does repeatedly point out that it is a

2   Canadian corporation that cannot be held liable for its subsidiary's wrongs.  In contrast, the prima

3   facie factual allegations asserted by Consulting include that Ignite Brands reached into Nevada to do

4   business related to obtaining contracts with Resorts World, an entity operating in Nevada.  The Letter

5   Agreement, whether one to which Ignite Brands is a party, includes a promise to grant Ignite Brands'

6   stock as compensation for Consulting fulfilling its obligations.  ECF No. 1-6.  The Letter Agreement

7   is to be interpreted under Nevada law and any litigation arising from the terms of the Letter

8   Agreement is to be conducted in Nevada.  *Id*.  At minimum, these facts demonstrate that Ignite Brands

9   could reasonably anticipate litigation over the compensation promised in the Letter Agreement to

10  occur in Nevada.  Requiring Ignite Brands to litigate in Nevada does not appear to be so heavy as to

11  warrant a denial of personal jurisdiction.

12    Plaintiff is not a Nevada resident; and it is possible some witnesses also reside outside the

13  State.  However, given that the events at issue are inextricably tied to Nevada, these facts do not

14  overcome all other factors favoring an exercise of personal jurisdiction.  As to the remaining factors,

15  the Court is unaware of any facts that would suggest that the interests of Canada are at odds with

16  those of Nevada in providing for an efficient resolution of the controversy or in furthering social

17  policy.

18    The foregoing discussion demonstrates the Court properly exercises personal jurisdiction

19  over Ignite Brands.

20    B.    Rule 13 of the Federal Rules of Civil Procedure.

21    While neither party raised Federal Rule of Civil Procedure 13(h) in its original arguments,

22  there is no doubt that this Rule pertains to the Counterclaims at issue here.  Moreover, that the parties

23  failed to discuss this Rule does not preclude the Court from applying the law that is appropriately

24  considered when deciding the instant Motion.[6]  Rule 13(h) states: "Rules 19 and 20 govern the

25  addition of a person as a party to a counterclaim or crossclaim."  As explained by the U.S. District

26  Court for the District of Hawaii, "The plain reading of the rule shows that the proper use of Rule

27  _____

[6]    *See Sequoia Forestkeeper v. U.S. Forest Service*, Case No. CV 09-392 LJO JLT, 2010 WL 5059621, at *19 n.4
28  (E.D. Cal. Dec. 3, 2010) (admonishing the parties that continued failure to discuss controlling law, which the court did,
     would result in an order to show cause why sanctions should not be granted).

13(h) is to bring a counterclaim against a party and then add a non-party to the same claim." *Casados v. Drury*, Case No. 13-00283 LEK-RLP, 2014 WL 2968179, at *2 (D. Haw. June 30, 2014). Given that Rule 13(h) allows for the addition of non-parties to a counterclaim, the Court must decide whether Ignite Brands is properly joined in this lawsuit under either Federal Rules of Civil Procedure 19 or 20.

C.      Federal Rules of Civil Procedure 19 and 20.

Federal Rules of Civil Procedure 19 and 20 ("Rule 19" and "Rule 20," respectively) address required and permissive joinders of parties. Under Rule 19(a)(1), a party "whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if (A) in that … [party's] absence, the court cannot accord complete relief among the existing parties; or (B) that … [party] claims an interest relating to the subject of the action and is so situated that disposing of the action in the … [party's] absence may … impair or impede the … [party's] ability to protect the interest; or … leave the existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of that interest." In this case, there is no dispute that Ignite Brands is a Canadian corporation with its principal place of business in Canada. Thus, joining Ignite Brands will not deprive the Court of subject matter jurisdiction as the parties remain diverse.

The Court next considers whether, in Ignite Brands' absence, complete relief can be accorded to the existing parties or whether Ignite Brands would be unable to protect its interest or be subject to multiple or inconsistent obligations. "In the context of Rule 19, 'complete relief' means that the existing parties can get meaningful recovery for their claims without multiple lawsuits on the same cause of action." *SPECS Surface Nano Analysis GmbH v. Kose*, Case No. C 11-00393 JW, 2011 WL 2493722, at *2 (N.D. Cal. June 23, 2011) (citing *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983). "The 'completeness' of relief under Rule 19 'must be analyzed within ... the four corners of the complaint,' because the relevant question for Rule 19 'must be whether success in the litigation can afford the plaintiffs the relief *for which they have prayed*.'" *Id.* citing *Confederate Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1501 (9th Cir. 1991) (O'Scannlain, J., concurring in part and dissenting in part) (emphasis in original); *Meredith v. Callahan*, 987 F.Supp. 846, 853 (D. Nev. 1997) (citing *Confederate Tribes*). *See also Fisk Electric*

1    *Company v. Obayashi Corporation*, Case No. 18-cv-07671-EMC, 2021 WL 197671, at ** 3-4 (N.D.

2    Cal. Jan 20, 2021) *citing* Moore's Fed. Prac. – Civ. § 19.03[2][b][ii] ("joinder is required only when

3    the absentee's nonjoinder precludes the court from rendering complete justice *among those already*

4    *joined*. ...   The "complete relief" clause does not contemplate other potential defendants, or other

5    possible remedies) (emphasis in original); *Eldredge v. Carpenters 46 N. Cal. Ctys. Joint*

6    *Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981) (the part of Rule 19 related to

7    complete relief "is concerned only with relief as between the persons already parties, not as between

8    a party and the absent person whose joinder is sought'"); and *Arkwright-Boston Mfrs. Mut. Ins. Co.*

9    *v. New York*, 762 F.2d 205, 209 (2d Cir. 1985) (stating that "the term complete relief refers only 'to

10   relief as between the persons already parties, and not as between a party and the absent person whose

11   joinder is sought'").[7]

12          The four corners of Ignite Spirits' Complaint seek declaratory relief in its favor arguing the

13   Letter Agreement is invalid and unenforceable.  ECF No. 1-2.  The Court finds no reason why Ignite

14   Spirits cannot obtain complete relief on this claim in the absence of Ignite Brands as a party.

15          However, the Court must also consider whether Ignite Brands would be unable to protect its

16   interest or be subject to multiple or inconsistent obligations if it is not joined in this litigation.  Unlike

17   Consulting's claim against Ignite International that was limited to unjust enrichment, Consulting's

18   claims against Ignite Brands include breach of contract and breach of good faith and fair dealing for

19   failing to fulfill the terms of the Letter Agreement.  If bound to the Letter Agreement, Ignite Brands'

20   interests include the potential for issuing an ownership interest—stock and stock options—in the

21   entity to Consulting.   This interest alone demonstrates that Ignite Brands must be joined as a

22   Counterclaim Defendant.[8]  In sum, because it is undecided whether Ignite Brands is a party to the

23   Letter Agreement, the Court finds Ignite Brands must be joined in this action to protect its interests.

24

25

26

27   [7]      In its Objection, Consulting avers that the Court's reliance on *Confederate Tribes* is in error.  ECF No. 51 at 8
     nn. 4, 5.  Consulting's footnote 4 cites many cases, all of which are outside the Ninth Circuit.  Consulting's citations are
     inapplicable to the analysis above.
28   [8]      Because Ignite Brands is a required party, the Court does not discuss permissive joinder.

1      D.      Venue is Proper.

2           Ignite Brands' Motion under Fed. R. Civ. P. 12(b)(3) fails.  The pleadings need not be

3   accepted as true, *Richards v. Lloyd's of London*, 135 F.3d 1289, 1292 (9th Cir. 1998), and the Court

4   may consider facts outside of the pleadings.  *Argueta v. Banco Mexicano*, *S.A.*, 87 F.3d 320, 324 (9th

5   Cir. 1996).  Moreover, the trial court must draw all reasonable inferences in favor of the non-moving

6   party.  *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004) (internal citations

7   omitted).  Here, Ignite Brands' argument contending improper venue is contained within a single

8   paragraph that is, at best, unpersuasive.  Arguing that Ignite Brands is not a party to the Letter

9   Agreement, Ignite Brands states it did not agree to Nevada as the forum for litigation.  ECF No. 39

10  at 9.  However, "where venue exists for the principal claim, federal courts will also adjudicate closely

11  related claims, even if there is no independent source of venue for the related claims." *Kaiai Foods,*

12  *Inc. v. Bellafiore*, 70 F.Supp.3d 1178, 1184 (N.D. Cal. Oct. 3, 2014) (internal citation omitted).

13  Venue is proper given Ignite Spirits' claims against Consulting was brought in the Eighth Judicial

14  District Court for Clark County, Nevada.  The Counterclaims brought by Consulting against Ignite

15  Brands are closely related (as stated above).  Accordingly, the Court finds the challenge to venue by

16  Ignite Brands fails.[9]

17  **III.    Recommendation**

18          Accordingly, IT IS HEREBY RECOMMENDED that Counterclaim Defendant Ignite

19  International Brands, Ltd.'s Motion to Dismiss Counterclaim (ECF No. 39) and Motion for More

20  Definite Statement (ECF No. 40) be DENIED.

21

22

23

24

25

26  [9]     Ignite Brands' Motion for More Definite Statement returns to the argument that it cannot be held liable based
27  on a parent-subsidiary relationship with Ignite Spirits, adding contentions related to piercing the corporate veil.  ECF
    No. 39 at 11.  As discussed *supra*, the Court finds these arguments fail.  Consulting does not allege Ignite Brands'
28  liability based on a parent-subsidiary relationship with Ignite Spirits, but on independent bases that are sufficient to state
    claims against Ignite Brands at the pleading stage of proceedings.

1    IT IS FURTHER RECOMMENDED that Consulting by AR, LLC's Motion for Leave to

2  Supplement its Response in Opposition to Counterclaim Defendant Ignite International Brands,

3  Ltd.'s (I) Motion to Dismiss Counterclaim and (II) Motion for More Definite Statement (ECF No.

4  52) be DENIED as moot.

5    Dated this 24th day of January, 2022.

6

7

8    _____
     ELAYNA J. YOUCHAH
     UNITED STATES MAGISTRATE JUDGE
9

10    <u>NOTICE</u>

11    Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be

12  in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has

13  held that the courts of appeal may determine that an appeal has been waived due to the failure to file

14  objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also

15  held that (1) failure to file objections within the specified time and (2) failure to properly address

16  and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal

17  factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir.

18  1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

19

20

21

22

23

24

25

26

27

28