# EXHIBIT G

## Excerpts from Deposition of Ignite International Brands, Ltd.

# EXHIBIT G

CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands
Scott Rohleder                    Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

IGNITE SPIRITS, INC., a )
Wyoming corporation, )
)
            Plaintiff, ) Case No.
) 2:21-cv-01590-
vs. ) JCM-EJY
)
CONSULTING BY AR, LLC, a )
Florida limited liability )
company; et al., )
)
            Defendants. )
)
   AND ALL RELATED MATTERS )
_____ )

DESIGNATED AS CONFIDENTIAL

DEPOSITION OF SCOTT ROHLEDER 30(b)(6) DESIGNEE OF

IGNITE INTERNATIONAL BRANDS, LTD.

Taken on Wednesday, May 4, 2022

By Videotape

By a Certified Court Reporter

At 8:02 a.m.

At 9555 Hillwood Drive

Las Vegas, Nevada

Reported by:  Wendy Sara Honable, CCR No. 875
Nevada CSR No. 875
California CSR No. 13186
Washington CCR No. 2267
Utah CCR No. 7357039-7801
Job No. 49129, Firm No. 061F

Page 2

APPEARANCES


For Ignite International and Ignite
    International Brands:

            Ryan A. Ellis
            Ryan Ellis Law
            3275 South Jones Boulevard
            Suite 105
            Las Vegas, Nevada  89146
            702.552.9000

For Ignite Spirits, Inc., and Dan Bilzerian:

            Kimberly P. Stein
            Flangas Law Group
            3275 South Jones Boulevard
            Suite 105
            Las Vegas, Nevada  89146
            702.307.9500
            702.382.9452 Fax
            kps@fdlawlv.com


For Consulting by AR, LLC:

            Jon T. Pearson
            Justin Berkman
            Holland & Hart LLP
            9555 Hillwood Drive
            2nd Floor
            Las Vegas, Nevada  89134
            702.669.4600
            jtpearson@hollandhart.com

Also Present:
            Alan Richardson
                (via videoteleconference)
            Nick Nardiello, Videographer
                Oasis Reporting Services


            <<<<<<  >>>>>>

Case 2:21-cv-01590-JCM-EJY    Document 85-5    Filed 06/30/22    Page 4 of 36
CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands
Scott Rohleder                                    Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 3

EXAMINATION INDEX

EXAMINATION BY:                                    PAGE NO.

MR. PEARSON                                              6

                    <<<<<<   >>>>>>

EXHIBIT INDEX

EXHIBIT NO.  DESCRIPTION                           PAGE NO.

Exhibit 23   Notice of 30(b)(6) Videotaped      9
             Deposition of Ignite
             International Brands, Ltd.
             dated 4/25/22; 10 pages

Exhibit 24   E-Mail Message to Pearson/Stein    21
             from Ellis and Attached
             Documentation
             dated 5/3/22; 127 pages

Exhibit 25   Counterclaim Defendant Ignite      34
             International Brands, Ltd.'s
             Response to Defendant Consulting
             by AR's First Request for
             Production of Documents
             dated 1/26/22; 43 pages

CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands
Scott Rohleder                          Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 4

INDEX:  (continuing)

Exhibit 26    E-Mail Message to Holden from        86
              Lichtenberger and Attached
              Documentation
              dated 4/26/21; 10 pages
              CONSULTING_00205 - 214

Exhibit 27    Letter of Intent                     87
              dated 4/26/21; 8 pages
              IGNITE000008 - 15

Exhibit 28    Retail Pop-Up Space License          93
              Agreement and Attached
              Documentation
              dated 7/2/21; 35 pages
              IGNATE000016 -49

Exhibit 29    Strategic Marketing Alliance         96
              Agreement and Attached
              Documentation
              dated 7/2/21; 18 pages
              IGNITE000051 - 68

Exhibit 30    Text Message Chain                   112
              various dates; 34 pages
              CONSULTING_00642 - 676

Exhibit 31    E-Mail Message to Lichtenberger      116
              from Richardson and Attached
              Documentation
              dated 4/23/21; 3 pages
              CONSULTING_00505 - 507

(Previously Marked Exhibit Nos. 5, 9, 13, 14, 15,
     16, 18, and 20 Attached for Convenience)

<<<<<<  >>>>>>

CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands
Scott Rohleder                                Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 5

P R O C E E D I N G S

(Prior to the commencement of the deposition, all parties present agreed to waive statements by the court reporter pursuant to Rules 30(b)(5)(A) and 30(b)(5)(C) of the NRCP/FRCP.)

VIDEOGRAPHER:  Today is Wednesday, May 4th, 2022, and the time is approximately 8:02 a.m. The court reporter is Wendy Honable, and I'm your videographer, Nick Nardiello.  We are here on behalf of Oasis Reporting Services.

The witness today is Ignite Brands Limited 30(b)(6) witness Scott Rohleder, and we are here in the case Ignite Spirits, Inc. vs. Consulting by AR, LLC, et al.

Will counsel please state your appearances and then the court reporter will administer the oath.

MR. PEARSON:  Good morning.  My name's Jon Pearson.  I represent Consulting by AR, LLC, and Consulting's representative Alan Richardson is on this Zoom, so he's also on this.

MR. ELLIS:  And good morning.  My name is Ryan Ellis.  I represent Ignite International Brands and Ignite International.

303

CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands

Scott Rohleder                                    Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 6

MS. STEIN:  Kimberly Stein on behalf of Ignite Spirits, Inc.

SCOTT ROHLEDER,

having been first duly sworn, was

examined and testified as follows:

EXAMINATION

BY MR. PEARSON:

Q.    Good morning.  Will you please state your full name for the record.

A.    Scott Rohleder.

Q.    And, Mr. Rohleder, where do you currently work?

A.    I am a consultant for several different companies, but my primary employment is Rohleder, Inc.

Q.    Okay.  Do you have any association with Ignite International Brands, Limited?

A.    Yes.

Q.    And what is your association with that company?

A.    I'm the interim CFO.

Q.    Okay.  And so today if I refer to Ignite

OASIS
REPORTING SERVICES

304

CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands

Scott Rohleder                                    Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 38

Q.    Yeah.  Let -- let's pick a time frame from March 2021 up until July of 2021.

A.    Okay.

Q.    During that time frame -- let's back up a little bit.

Are you aware of there being weekly Monday meetings during that time frame?

A.    Yes.

Q.    Okay.  And did you personally participate in those Monday meetings?

A.    Yes, when I could.

Q.    When you could?  All right.

Who else typically would participate in those meetings?

A.    Our director of marketing; our president; consultant David Bell; consultant Paul Bilzerian; our VP of sales, Lee Probst; possibly Paul Holden.

Q.    Okay.  Now, just so we get a few more names, you said director of marketing.

Who would that be in that time frame of March '21 -- 2021 -- sorry -- through June -- July 2021?

A.    I don't know if his title was director of marketing that entire time, but his name is Greg Solomon.

OASIS
REPORTING SERVICES

305

Page 48

A.    Yes.

Q.    Okay.  And can you elaborate on that, please?

MR. ELLIS:  Beyond the scope.

THE WITNESS:  Only that, because of his knowledge and experience, that providing him consideration as a board member, the company thought that it would be valuable.

BY MR. PEARSON:

Q.    And is it your understanding that he will become, or is that just still in discussion?

MR. ELLIS:  Beyond the scope.

THE WITNESS:  It's still in discussion.

BY MR. PEARSON:

Q.    Okay.  And Mr. Paul -- is it Dowdall?
He's no longer with the company, correct?

A.    Yes, that's correct.

Q.    And you replaced him as the interim CFO, correct?

A.    I became the interim CFO after Mr. Dowdall left, correct.

Q.    Okay.  Now, describe Ignite Brands' relationship with a company equalled Ignite International, Limited.

A.    Ignite International, Limited, is a

OASIS
REPORTING SERVICES

CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands
Scott Rohleder                                Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 49

wholly-owned subsidiary of Brands.

Q.   And if I referred to Ignite International, Limited, as "Ignite International," is that okay?

A.   Yes.

Q.   And I'll do my best to make that distinction throughout the day.  It's a wholly-owned subsidiary, Ignite Brands.

Does Ignite International then report its financials directly to Brands?

A.   Yes.  It's consolidated.

Q.   And then Brands reports on a consolidated basis, correct?

A.   Yes.

Q.   Okay.  And does Ignite International itself, to your understanding, have any employees?

MR. ELLIS:  Beyond the scope.

THE WITNESS:  Yes.

BY MR. PEARSON:

Q.   Okay.  And roughly how many employees does Ignite International have?

MR. ELLIS:  Beyond the scope.

THE WITNESS:  Roughly 20.

BY MR. PEARSON:

Q.   And does Ignite International have any

OASIS REPORTING SERVICES

CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands
Scott Rohleder                                              Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 52

management as part of the management team.

Q.   Okay.  And then you say a "marketing team."

Who are the members of the marketing team?

MR. ELLIS:  Object.  Beyond the scope.

I'm sorry.  Are you asking about Brands or --

MR. PEARSON:  For International.

MR. ELLIS:  Okay.  Beyond the scope.

THE WITNESS:  Well, I mentioned Greg Solomon, but there are other employees that support Mr. Solomon, whether it be through, you know, the e-commerce functions or event planning and other activities within the marketing -- within the, you know, marketing activities of the company.

BY MR. PEARSON:

Q.   Okay.  And let's move on to Ignite Spirits, Inc.

You're familiar with that entity?

A.   Yes.

Q.   And I'll refer to them as "Ignite Spirits" today, if that's okay.

A.   Yes.

Q.   And describe the relationship between

Page 53

Ignite Brands and Ignite Spirits.

A.    Spirits is a wholly-owned subsidiary of Brands.

Q.    And kind of some similar questions.

Ignite Spirits reports its financials directly to Ignite Brands and then Ignite Brands reports that on a consolidated basis?

A.    Correct, yes.

Q.    Okay.  And are you aware -- well, actually, does Ignite Spirits have employees itself?

MR. ELLIS:  Objection.  Beyond the scope.

THE WITNESS:  Yes.

BY MR. PEARSON:

Q.    And do any of those employees also provide services for Ignite Brands?

A.    No.

Q.    Okay.  And do you know whether or not Ignite Spirits has any offices?

MR. ELLIS:  Beyond the scope.

THE WITNESS:  It does not.

BY MR. PEARSON:

Q.    Okay.  And roughly how many employees does Ignite Spirits have?

MR. ELLIS:  Beyond the scope.

THE WITNESS:  One.

Page 55

Our Z-RO energy drink, Z-R-O.

Q.    And that's all through Ignite International, right?

A.    Yes.

Q.    Okay.  Now, backing up a little bit, going back to the Monday meetings, same time frame, March 2021 through July 2021.

Would issues relating to the subsidiary entities -- for example, Ignite Spirits, Ignite International -- also be discussed during those meetings?

MR. ELLIS:  Scope.

THE WITNESS:  Yes.

BY MR. PEARSON:

Q.    Okay.  And how about the board meetings? Same question, same time frame.

MR. ELLIS:  Same objection.

THE WITNESS:  Yes.

BY MR. PEARSON:

Q.    Okay.  And would the board make decisions on behalf of the subsidiaries?

MR. ELLIS:  Beyond the scope. Foundation.

THE WITNESS:  Can you be more specific, please?

OASIS REPORTING SERVICES

Page 56

BY MR. PEARSON:

Q.    Yeah.

Would Ignite Brand's board of directors make decisions that would impact the subsidiary companies during that time frame of March 2021 through July 2021?

MR. ELLIS:  Vague as to "decisions." Scope.

THE WITNESS:  They could provide input.

BY MR. PEARSON:

Q.    The board could?

A.    (Witness nodding.)

If -- the subsidiaries have their own boards -- or, I should say, directors, rather, but those meetings would discuss what I call the consolidated entities.

Q.    All right.  So those meetings you're talking about -- let's just dissect it a little bit.

The Ignite Brands' board meetings, you would say they would discuss the consolidated entities?

A.    Yes, sir.

Q.    And when you say "consolidated entities," what -- who are you referring to?

A.    Well, all the worldwide entities that the

Scott Rohleder                                    Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 57

company has, and there are other entities other than Brands and Ignite International.

Q.    So all the various -- so we've got Brands, the -- we'll call it the parent.

A.    Yes.

Q.    And then you have the next level, all the subs, right?

A.    Yes.

Q.    So you're referring to that as the consolidated entities?

A.    Yes.

Q.    And why did you use the word "consolidated entities"?

A.    Just in my brain, that's the best way to describe it.  There is no definition to it other than -- for me, it was the easiest way to explain it to you.

Q.    And why is that, though?  Help me out.

MR. ELLIS:  Objection.  Asked and answered.  Argumentative.

THE WITNESS:  I don't know how to answer it.

MR. PEARSON:  Okay.  Let's take our first break, please.

VIDEOGRAPHER:  We are off the video

OASIS
REPORTING SERVICES

CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands
Scott Rohleder                                    Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 58

record.  The time is 9:08 a.m.

                    (Recess 9:08 to 9:26 a.m.)

                    VIDEOGRAPHER:  We're back on the video
record.  The time is 9:26 a.m.  You may proceed.

                    EXAMINATION (Continuing)
BY MR. PEARSON:

        Q.    Mr. Rohleder, please describe Ignite
Brands' relationship with Mr. David Bell.

        A.    Mr. Bell's an unpaid consultant for the
company.

        Q.    And how long has he been an unpaid
consultant for Ignite Brands?

        A.    I don't know the specific date, but at
least a year or year and a half.

        Q.    And how did that come about?

        A.    David is a friend of both Dan and Paul
Bilzerian.

        Q.    And did one of the Bilzerians ask him to
provide services as an unpaid consultant?

        A.    I don't know the specifics on how that
relationship came about.

Page 61

Q.    And do you recall in that March '21 --
2021 through July 2021 time period, on the month --
on the Monday meetings, do you recall there being a
Monday meeting -- sometimes I get my tongue tied.
Let me just start all over here.

Time frame, March 2021 through July 2021.

On the weekly Monday meetings, do you
recall there ever being one in which Mr. David Bell
did not participate?

A.    I don't recall a specific one where he
did or did not.  I can't answer either way.

Q.    Okay.  How about Mr. Paul Bilzerian?
Same question.

A.    Same way.  I can't answer either way.

Can I say that for both, were they ever
on every call?  The answer is no.  I'm sure that
they missed, but I can't tell you dates.

Q.    Okay.  How about board meetings from
March 2021 through July 2021.

Do you recall there ever being a board
meeting in which Mr. Bell did not participate as a
guest?

A.    I don't recall.

Q.    How about Mr. Paul Bilzerian?

A.    I don't believe that Mr. Bilzerian

CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands
Scott Rohleder                                    Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 62

missed.

Q.    You don't think he has missed a meeting?

A.    Correct.

Q.    Okay.  As a guest?

A.    As a guest.

Q.    All right.  Do you know if Mr. Paul Bilzerian ever loaned money to Ignite Brands?

MR. ELLIS:  Beyond the scope.

THE WITNESS:  No.

BY MR. PEARSON:

Q.    You don't know?

A.    No.  He -- the answer is he did not lend any money to Ignite Brands.

Q.    Do you know whether or not any entity he's affiliated with loaned money to Ignite Brands?

MR. ELLIS:  Beyond the scope.  Calls for speculation.

THE WITNESS:  I think I need more clarification on what you're asking.  I don't quite understand the question.

BY MR. PEARSON:

Q.    Do you know whether or not any company that Mr. Paul Bilzerian is affiliated with has loaned money to Ignite Brands?

MR. ELLIS:  Beyond the scope.  Calls for

OASIS
REPORTING SERVICES

315

Scott Rohleder                                    Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 65

A.    No.

Q.    How about Mr. Paul Bilzerian?

Does anyone report -- does he report to anyone at Ignite Brands?

A.    Well, I'll walk that back.  It's technically back to Dan Bilzerian, the CEO.  I mean, it -- Paul is Dan's father, and I think that's known, and so he is serving at the pleasure of his son.

Q.    Okay.  And you said "walk that back."

So is it the same answer for Mr. Bell?

A.    Yes, Mr. Bell.

Q.    And do you know if anyone reports directly to Mr. Paul Bilzerian?

A.    No.

MR. ELLIS:  I'm sorry.  Can we clarify that?

Do you know if --

MR. PEARSON:  Anyone at Ignite Brands reports to Paul Bilzerian.

MR. ELLIS:  Okay.  Do you know if they report to Paul?

MR. PEARSON:  Yes.

THE WITNESS:  No, they do not.  There's no one that reports directly to Paul.

OASIS
REPORTING SERVICES

CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands
Scott Rohleder                                    Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 69

obtaining an agreement between Ignite and Resorts World.

BY MR. PEARSON:

Q.    Okay.  And do you know who negotiated the letter agreement?

A.    Yes.

Q.    Who all negotiated the letter agreement?

A.    As I understand it, Dan Bilzerian was involved in the negotiation, Paul Bilzerian was involved in the negotiation, and David Bell was involved in the negotiation.

Q.    Anyone else from Ignite Brands?

A.    Not to my knowledge.

Q.    Okay.  And do you recall -- you, personally, in this question -- seeing this document before it was signed?

MR. ELLIS:  Objection.  Beyond the scopes.

THE WITNESS:  No, I don't remember seeing it before it was signed.

BY MR. PEARSON:

Q.    Okay.  Do you know -- well, actually, let me ask this a different way.

So if you go to Page 2, the signatures, and there's an Alan Richardson line as manager and

OASIS
REPORTING SERVICES

317

CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands
Scott Rohleder                                Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 70

then John Schaefer as president.

Is it your understanding whether the board of directors had to approve this agreement before it was signed?

A.    It would not be necessary for the board --

MS. STEIN:  Hold on, sir, please.

I'm just going to object with regards to misstates the document and as it relates to Ignite Spirits.

MR. ELLIS:  And I'll join as to vague and ambiguous.

BY MR. PEARSON:

Q.    Do you know whether or not Ignite Brands' board of directors would need to approve this document before it was signed?

MR. ELLIS:  Asked and answered.

MS. STEIN:  Assumes facts not in evidence.

THE WITNESS:  No.  The management -- this is a management contract.  This isn't a board matter.

BY MR. PEARSON:

Q.    Okay.  And your testimony earlier is the letter agreement was never discussed at one of the

OASIS
REPORTING SERVICES

318

CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands
Scott Rohleder                              Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 71

board meetings, correct?

A.    Yes, that's correct.  There would be no reason to.

MR. ELLIS:  And just asked and answered. Thank you.  Sorry.

BY MR. PEARSON:

Q.    Do you know whether Mr. Dan Bilzerian approved this letter agreement, then, before it was signed?

MR. ELLIS:  Objection.  It's beyond the scope, but also asked and answered.

THE WITNESS:  I don't know.

MS. STEIN:  And I'll join.

BY MR. PEARSON:

Q.    And if you look at -- there's a couple of exhibits to this document, Exhibit A, B, and C.  I want to focus your attention on B and C.

So B is a Form of Option Agreement, and that's Ignite 4 and 5, and C is Form of Renewal Option Agreement, 6 and 7.

Do you see that, sir?

A.    Yes.

Q.    Okay.  Do you know who prepared Exhibit B?

A.    As I recall, this draft was initially

OASIS REPORTING SERVICES

Page 73

BY MR. PEARSON:

Q.    Okay.  Did you take any independent steps outside of your preparation with attorneys to come to that understanding that this was prepared by Mr. Richardson's counsel?

MR. ELLIS:  Same objection, to the extent it includes company counsel.

THE WITNESS:  No.

BY MR. PEARSON:

Q.    So if you look on Page 1 of Exhibit 5, Section 2 is labeled Compensation to C-AR.

Do you see that, sir?

A.    Yes.

Q.    Okay.  And what is your understanding of this provision?

MR. ELLIS:  Objection.  Calls for legal conclusion.  Document speaks for itself. Speculation.  Foundation.  Beyond the scope.

You can answer.

BY MR. PEARSON:

Q.    All right.  How about this:

Do you have an understanding of what this provision, Section 2, is supposed to be conveying?

MR. ELLIS:  Are you asking him personally or asking him on behalf of Brands?

OASIS
REPORTING SERVICES

CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands
Scott Rohleder                    Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 74

MR. PEARSON: On behalf of Brands.

MR. ELLIS: Same objections.

MS. STEIN: I'm also going to object to the extent that it misstates the document on behalf of Spirits.

THE WITNESS: The answer is yes.

BY MR. PEARSON:

Q. And what is your understanding, sir?

A. That if Mr. Richardson would perform and provide the terms as outlined and conditions as outlined in this agreement with Resorts World, then he would earn compensation as outlined in the letter agreement. Again, the agreement speaks for itself.

Q. Okay. And the letter agreement compensation is -- includes stock from Ignite Brands, correct?

MR. ELLIS: I reiterate my previous objections.

BY MR. PEARSON:

Q. Correct?

A. Yes, that is correct.

Q. And stock options, correct?

MR. ELLIS: Same objections.

THE WITNESS: Correct.

////

CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands

Scott Rohleder                                    Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 83

BY MR. PEARSON:

Q.    You said it was tied to the grand opening date, correct?

A.    Yes.

Q.    Was it important to have a contract in place before the grand opening?

A.    Sure.  I would think it would -- it was important to have a contract in place by the date -- by the date of the agreement.

Q.    Why?

MR. ELLIS:  Objection.  Argumentative.

THE WITNESS:  I think just from business practice that if -- if you have a requirement or a due date that you live up to the due date.

BY MR. PEARSON:

Q.    And are you aware of, other than the letter agreement, any other document that representatives of Ignite Brands expressed the importance of July 1st to Mr. Richardson?

A.    There were a lot of documents, I know in production, that we provided.  You know, I've looked through those, but, you know, if -- if I had some of those to refresh my memory, I'm sure I could come up with some better or additional reasons.

Q.    Do you recall sitting here today a single

CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands
Scott Rohleder                    Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 84

document outside of this one that discusses the July 1st date?

MR. ELLIS:  Asked and answered.

THE WITNESS:  No.

BY MR. PEARSON:

Q.    No?  Okay.

Are you aware -- when was the actual final agreement signed?

A.    I believe it was July the 2nd.

Q.    What time?

A.    I don't know.

Q.    Are you aware that Mr. Dan Bilzerian performed obligations under that agreement before the deal was signed?

MR. ELLIS:  Objection.  Beyond -- to the extent it calls for -- beyond the scope as to Brands.

THE WITNESS:  I don't recall the actual dates, but I know he did perform.

BY MR. PEARSON:

Q.    Before it was signed, right?

A.    Again, I would have to cross-reference. I'm not sure.

Q.    When was the grand opening?

A.    It was either -- I thought it was in

323

Page 92

MR. ELLIS:  Objection.  The document speaks for itself.

THE WITNESS:  There's no reference.

BY MR. PEARSON:

Q.    Where does it say that Mr. Richardson -- or Consulting by AR's agreement, the letter agreement, Exhibit 5, should not be honored?

MR. ELLIS:  The document speaks for itself.  Argumentative.

THE WITNESS:  It's not reflected in this document.

BY MR. PEARSON:

Q.    Okay.  And then Mr. Paul Bilzerian says, This includes virtually all of our points except that there are two appearances you must make for which you should be paid $200,000 each, which should go to Ignite.

40,000 times 40 equals 16 million in value to Ignite, one half of which is yours.  If he gets that, then we have a deal, subject to definitive agreement, of course.

Did I read that correctly?

A.    Yes.

Q.    Do you have any understanding why he's using a 40 multiple here?

**OASIS**
REPORTING SERVICES

324

Page 93

A.    That is just a reference to the potential value that it could mean to Ignite.

Q.    And which Ignite?

A.    Ignite International Brands.

Q.    Okay.

            (Exhibit No. 28 marked

            for identification.)


BY MR. PEARSON:

Q.    So you've been handed Exhibit 28.  It says, Standard terms and conditions and recitals, IGNITE 18 through IGNITE 50.

          Have you seen this document before today?

          MR. ELLIS:  Do you have a Page 1 for this?

          MR. PEARSON:  Page 1?

          MR. ELLIS:  It starts on Page 2.

          MR. PEARSON:  You should have Page 18.

          MR. ELLIS:  Oh, I do.  I'm just looking at the very -- at the bottom middle.

          MR. PEARSON:  Oh, let me see.  Maybe it didn't get printed.

          MS. STEIN:  Page 18 is Page 2, not Bates 1, so there's another document.

          MR. PEARSON:  Yeah.  I understand.

CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands

Scott Rohleder                          Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 96

THE WITNESS:  Yes.

BY MR. PEARSON:

Q.    Okay.  And is this a type of agreement that the Ignite Brands' board of directors would need to approve?

MR. ELLIS:  Beyond the scope.

THE WITNESS:  No.

BY MR. PEARSON:

Q.    And why is that?

A.    This is a management decision, not a board decision.

MR. PEARSON:  Now, I'm going to mark another one.  Hopefully, I have all the pages.

(Exhibit No. 29 marked for identification.)

BY MR. PEARSON:

Q.    Okay.  So you've been handed 29, Strategic Marketing Alliance Agreement, IGNITE 51 through 68.

Have you seen this document before today?

A.    (Examining documents.)

Yes.

Q.    And when was the first time you saw this document?

OASIS
REPORTING SERVICES

326

CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands
Scott Rohleder                    Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 109

witness, which we do not appreciate.

MR. PEARSON:  Are you done?

MS. STEIN:  I'm done now.  Thank you, Counsel.

MR. PEARSON:  Thank you.

BY MR. PEARSON:

Q.  Okay.  Going back to this exhibit, John Schaefer, DAN 81, he's president/CEO of who?  You can look at the next page.

A.  Sure.  What -- what's the question again?

Q.  John Schaefer's the president and CEO of what entity?

A.  John Schaefer is the president of Ignite International Brands.

Q.  And also the CEO, correct?

A.  Not the CEO.

Q.  COO is what I said.  I'm sorry.

A.  Yes.

Q.  Okay.  And if you look on DAN 82, that's what his signature block says, correct?

A.  Yes, that's correct.

Q.  Are you aware whether or not John Schaefer had a different signature block if he was speaking on behalf of another Ignite entity other than Ignite Brands?

OASIS REPORTING SERVICES

327

Page 110

A.    No.

Q.    Okay.  So my question is, do you know why Ignite Brands did not produce this document?

MR. ELLIS:  I reiterate my same objections.

THE WITNESS:  I do not.

BY MR. PEARSON:

Q.    So you've been handed what's previously been marked Exhibit 20.  It's an e-mail from John Schaefer, July 20, 2021, to Mr. Richardson.

Do you see that, sir?

A.    Yes.

Q.    Have you seen this document before today?

MS. STEIN:  Same objection with regards to using exhibits from a nonparty.

THE WITNESS:  I have not.

BY MR. PEARSON:

Q.    Okay.  And this document was produced by my client, CONSULTING, you see in the lower, 363 is the Bates.

And Mr. Schaefer, again, is the president COO of Ignite International Brands, correct?

A.    Yes.

MS. STEIN:  Misstates prior testimony.

MR. PEARSON:  Okay.

Page 111

MR. ELLIS:  Join.

BY MR. PEARSON:

Q.    So following -- it says, Dear Alan, Following up on our conversation, I did a walkthrough at Resorts World today and talked with Scott and Solomon regarding Ignite's partnership with Resorts World.

It was clear they plan to honor their agreement with Ignite and will continue to work with this as strong brand partners.

I spoke to Paul B. and David about this, and they have both agreed Ignite should honor the deal made with you based on this feedback.

Do you see that, sir?

A.    Yes.

Q.    Were you aware that Mr. Schaefer, as Ignite Brands' president and CEO -- COO -- sorry -- sent this e-mail to Mr. Richardson?

MS. STEIN:  Misstates the document.

MR. ELLIS:  Join.

THE WITNESS:  No.

BY MR. PEARSON:

Q.    Were you aware that he said that both Paul B. and David agreed that the deal should be honored?

OASIS
REPORTING SERVICES

329

Page 114

Q.    And, earlier, you said that none of the letter agreement, letter of intent, or agreements with Resorts World were ever presented to the board, correct?

A.    Yes.

Q.    And none of those agreements needed to be approved by the board, right?

A.    That's correct.

Q.    So is Mr. Bell not being accurate when he says that it's going to be provided to the board for approval?

MR. ELLIS:  Calls for speculation.

MS. STEIN:  Misstates the document.

THE WITNESS:  I'm not sure what context Mr. Bell was making the comment.

BY MR. PEARSON:

Q.    Well, what context could it be other than presenting something to the actual board of directors?

Are there any other boards, I guess, may be a better way of asking?

A.    No, there's no other boards.

Q.    Okay.  So you can put that to the side.

So you've been handed what's been previously marked as Exhibit 16.  It's an e-mail

OASIS
REPORTING SERVICES

330

CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands

Scott Rohleder                              Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 115

from Paul Bilzerian to Alan Richardson copying David Bell, April 22nd, 2021, CONSULTING 165 to 166.

Do you see that, sir?

A.    (Examining documents.)

Yes.

Q.    And have you seen this document before today?

MS. STEIN:  Same objection with regards to using an exhibit from a nonparty.

MR. ELLIS:  Join.

THE WITNESS:  No, I have not.

BY MR. PEARSON:

Q.    Okay.  So if you look at the second paragraph at the top, Mr. Paul Bilzerian to Mr. Richardson says, With respect to the A- -- sorry.

With respect to the LOI between Resorts World and Ignite that I sent you earlier today, if Resorts World agrees to it, John will present it to the Ignite board for approval, which I am highly confident will happen.

Do you see that, sir?

A.    Yes.

Q.    And is your testimony still that the letter of intent was never presented to the board of

CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands
Scott Rohleder                        Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 118

THE WITNESS:  Well, first, Mr. Bilzerian responded, but I don't see any request for Mr. Holden asking for Mr. Bilzerian to respond.

BY MR. PEARSON:

Q.    So he took that on his own?

A.    That, I don't know.

Q.    Okay.  And you see Mr. Holden was copied, though, on the e-mail, Exhibit 31, first -- top?

A.    Yes.

Q.    And you see on the first paragraph towards the end, he goes -- Mr. Paul Bilzerian to Henry -- If and when a definitive agreement is signed between Resorts World and Ignite, it will be presented to the board of directors of Ignite together with the agreement, and the board will make a decision, which will be the function of the terms of the definitive agreement and the agreement.

Do you see that, sir?

A.    Yes.

Q.    Is that an accurate statement by Mr. Paul Bilzerian?

A.    There was no -- there was no agreement that was sent to the Ignite board.

Q.    Okay.  And do you have an understanding whether anyone at Ignite Brands ever corrected

OASIS
REPORTING SERVICES

332

CONFIDENTIAL - 30(b)(6) Designee of Ignite International Brands
Scott Rohleder                                        Ignite Spirits, Inc. v. Consulting by AR, LLC, et al.

Page 121

REPORTER'S CERTIFICATE

STATE OF NEVADA        )
                       ) ss
COUNTY OF CLARK        )

I, Wendy Sara Honable, CCR No. 875, a duly certified court reporter licensed in and for the State of Nevada, do hereby certify:

That I reported the taking of the videotaped deposition of the witness, SCOTT ROHLEDER, at the time and place aforesaid;

That prior to being examined, the witness was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;

That I thereafter transcribed my shorthand notes into typewriting and that the typewritten transcript of said deposition is a complete, true and accurate record of testimony provided by the witness at said time to the best of my ability.

I further certify (1) that I am not a relative, employee or independent contractor of counsel of any of the parties; nor a relative, employee or independent contractor of the parties involved in said action; nor a person financially interested in the action; nor do I have any other relationship with any of the parties or with counsel of any of the parties involved in the action that may reasonably cause my impartiality to be questioned; and (2) that transcript review pursuant to FRCP 30(e) was requested.

IN WITNESS WHEREOF, I have hereunto set my hand in the County of Clark, State of Nevada, this 18th day of May 2022.

_____
Wendy Sara Honable, CCR No. 875

www.oasisreporting.com                    **OASIS** REPORTING SERVICES                    702-476-4500

333