Gregory S. Gilbert (6310)
Jon T. Pearson (10182)
Brian D. Downing (14510)
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada 89134
702.669.4600
702.669.4650 fax
gsgilbert@hollandhart.com
jtpearson@hollandhart.com
bddowning@hollandhart.com

*Counsel for Defendant/Counterclaim Plaintiff*
*Consulting by AR, LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IGNITE SPIRITS, INC., a Wyoming corporation, | Case No. 2:21-cv-01590-JCM-EJY |
| Plaintiff, | **DEFENDANT CONSULTING BY AR, LLC'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL FORENSIC EXAMINATION OF DAN BILZERIAN'S CELLULAR PHONE AND COMPUTER/TABLET** |
| v. | |
| CONSULTING BY AR, LLC, a Florida limited liability company; DOES I through X, inclusive; and ROE BUSINESS ENTITIES I through X, inclusive, | |
| Defendants. | |
| And All Related Claims. | |

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NEVADA 89134

HOLLAND & HART LLP<br>9555 HILLWOOD DRIVE, 2ND FLOOR<br>LAS VEGAS, NEVADA 89134

## PRELIMINARY STATEMENT

From the outset of this litigation, Dan Bilzerian along with his "companies," have been unusually difficult even for an adversarial setting, and have consistently sought to avoid any meaningful participation in the discovery process. While the Company could have brought a plethora of discovery motions and sought sanctions against Dan, Ignite, and their counsel for their appalling and obstructionist behavior, the Company chose a more disciplined and judicially economical route. The Company tried to obtain the necessary discovery so that a more complete record would be presented to the Court for a narrower relief compared to multiple violations and requests for relief. When Ignite began its "corporate shell game," the Company tried to have sensible discussions with Ignite, and for the most part those discussions were fruitless. To avoid costly and time-consuming motion practice, the Company also sought documents from key executives and players, such as Dan, David Bell, John Schaefer, and Resorts World. Through discovery, ample evidence was obtained showing that Paul Bilzerian has a much larger role at Ignite generally than an "unpaid" consultant, and that his son, Dan, who serves as CEO and Chairman, is no more than Paul's proxy at Ignite. In fact, Paul participated in the deposition preparation of Scott Rohleder, Ignite Brands, Ignite Spirits, and Ignite International's 30(b)(6) designee. (Ex. 6 at 436–437 (12:12–1314:9); Ex. 7 at 449 (10:12–19); Ex. 8 at 457 (9:20–24)) Thus, Paul's communications with other representatives of Ignite are relevant.

Unfortunately, Paul lives in Saint Kitts, and the only mechanism available to obtain discovery from Paul is through a letter of rogatory. But to presume that Paul—a felon who fled the United States to avoid paying a substantial judgment obtained against him by the SEC—would comply when his own son and the companies effectively controlled by Paul refuse to comply with their obligations with judicial oversight would be foolish, and would have overburdened this Court and the Company considering most of the discovery should be available from Dan. Because the Company does not have unlimited resources and was trying to move this case along, it chose not to waste its time pursuing Paul with international letters of rogatory and instead focused on obtaining discovery from the parties and their executives and consultants, most of which have a direct communication channel to Paul.

1

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NEVADA 89134

Through discovery, the Company learned that none of the Ignite entities tried to obtain documents from Dan, Bell, Schaefer, and Paul, which is essentially all key personnel for Ignite overall and all personnel directly involved in the underlying dispute in this lawsuit. (*See*, *e.g.*, Ex. 6 at 439–441 (25:6–27:3); Ex. 10 at 475 (129:19–23)) Bell testified that he had limited documents because he had obtained new phones over the last year, and he never backed up his phone. Schaefer provided some documents but he would not have had the extent or level of communications with Paul that Dan and Bell would. Thus, the Company comes to this Court with proof and basic logic in support of its motion. *First*, there are communications between the Company and Paul, and the Company and others from Ignite, showing that Paul and Dan are communicating about the business issues at hand. *Second*, Dan as CEO and Chairman of Ignite Brands, a director of Ignite International, and Paul's son and proxy, is the most logical source from which to seek communications relating to core issues to parties' claims and defenses. Predictably, Dan refused to fully comply with his discovery obligations, and made clear that he would not provide his phone to a third-party professional vendor. As a result, it is appropriate to compel a forensic examination of Dan's cell phone and computer/tablet.

Unfortunately, as detailed in the Company's motion, Dan's counsel's conduct throughout this litigation has been appalling, and, as evidenced by Dan's opposition, it is impossible to have a sensible, meaningful discussion because Dan's counsel either does not understand basic rules of civil procedure or chooses to do and say whatever is necessary to "appease" her client. To put it bluntly, Dan's counsel was abusive, obstructed the process of obtaining discovery, helped facilitate declarations containing flagrant misrepresentations, and threatened to file a bar complaint against the Company's counsel. Dan's counsel even stated on the record that she would not allow the Company's counsel to "put [a public document] into evidence." (ECF No. 72–1, at 388 ( 221:4–22)); *see O'Neal v. Las Vegas Metro. Police Dep't*, No. 2:17-cv-02765-APG-EJY, 2020 U.S. Dist. LEXIS 143119, at *4 (D. Nev. Aug. 10, 2020) (meet and confer to be futile when plaintiff, among other things, "engaged in verbally abusive conduct when confronted with discovery processes"). Dan also repeatedly invoked his Fifth Amendment right to simple business-related questions related to involvement and interaction with his father, Paul as to Ignite's business with the

Company. Because of the stonewalling, abhorrent and abusive conduct, and inability to have a constructive dialogue relating to basic rules of civil procedure, a conference beyond those that had occurred would be futile and a colossal waste of the Company's resources and its counsel's time. The Company's motion should thus be granted.

**ARGUMENT**

**A.     A Forensic Examination of Dan's Phone and Laptop/Tablet Is Necessary Because Of His Egregious Failures to Comply with His Discovery Obligations**

The opposition fails to address the egregious behavior of Dan and his counsel in discovery. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 (N.D. Cal. 2013) (finding argument conceded when plaintiff failed to address it in opposition). The reason for this omission is simple: there is no defense for this type of abhorrent conduct. Dan's conspicuous failure to acknowledge or explain this flagrant misconduct can only serve as a tacit admission that this behavior was calculated and deliberately deployed to obstruct the process and improperly withhold discoverable information. *King v. Dillon Transp., Inc.*, CV411-028, 2012 U.S. Dist. LEXIS 22381 (N.D. Ga. Feb. 22, 2012) ("Discovery is not a game of cat and mouse, of continual pursuit and near capture by one party and endless escape by the other. It is intended to be a self-executing, extrajudicial exercise that depends upon the parties' careful attention to and compliance with the rules.").

This Court already called out the discovery gamesmanship as this is not the first time that Dan (either individually or through one of his "companies") and his counsel, Ms. Stein, have employed this nefarious strategy to thwart the discovery process. (ECF No. 73-1, 416 ("Suffice to say, the Bilzerian entity Ignite US did not participate fully and robustly in discovery related to the instant subpoena."), *id.* 418 ("There is an element of 'corporate shell game' here to avoid the discovery. And all shells are in Mr. Bilzerian's control. As the Court noted at today's hearing, the Court is out of patience with this conduct."), *id.* 418–420) To distract from this nefarious pattern of conduct, Dan's opposition ignores these facts and resorts to a strategy of obfuscation.

Indeed, Dan only makes one substantive argument opposing the request for a forensic examination. He claims that a forensic examination is unnecessary because "Counterclaim Plaintiff admits it is in possession of the same documents it seeks in its Motion." (ECF No. 93, at

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NEVADA 89134

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NEVADA 89134

11) This flagrant misrepresentation by Dan mischaracterizes the relief sought because the Company is not seeking just communications between Dan and Alan Richardson, and illustrates why any further efforts to resolve discovery issues with Dan and his companies would have been an exercise in futility. When sentences are not cherry-picked, the Company's point is clear because Richardson, on behalf of the Company, provided his devices to a reputable third-party vendor to properly collect and extract documents and communications, the Company was not asking anything more from Dan except that he provide his devices to a reputable forensic examiner.

> The Company is not asking for anything more than what was essentially provided by the Company. *Richardson, on behalf of the Company, turn[ed] in his cell phone that he used to communicate with Dan about issue[s] related to the Letter Agreement and other core issues over to Holo so that they could properly extract the emails and text messages.*

(ECF No. 70, at 16 (emphasis supplied)) A reputable forensic examiner is necessary because of the obfuscation and dishonest conduct by Dan.

It is also highly misleading to contend that the Company "is already in possession of the same documents it seeks by way of its Motion." (*See* ECF No. 93, at 8) The documents outlined in the Company's motion—communications that Dan failed to produce but which were obtained by the Company through alternate sources—are not the only documents sought by the Company. Rather, these documents merely serve as evidence that Dan lied about his collection and production of documents, and establish the obfuscation by Dan and his professionals. *See Bank of Mongolia v. M & P Glob. Fin. Servs., Inc.*, 258 F.R.D. 514, 520 (S.D. Fla. 2009). Because Dan and his professionals cannot be trusted, a forensic examination is necessary to recover key evidence in this case, clarify any spoliation claims and arguments, or both. (*See* ECF No. 70, at 15–16)

Dan's contention that he testified that "the communications sought do not exist," and that "there is nothing else to discover" is simply not true. (ECF No. 93, at 7) Dan is a liar who was willing to commit perjury over something as innocuous as service of a subpoena, and was not honest enough to admit his lie when confronted by video of him getting served. (Ex. 12 (489–491)) The documents exist, and Dan is either refusing to provide them, deleted them, or both. Below are just some examples of documents that should be within Dan's possession, custody, or control.

4

| Dan's Position | The Truth |
|---|---|
| Dan produced 11 pages of *screenshots* of text messages between him and Richardson. Dan testified that he "didn't communicate very much on text [with Richardson]. It was mostly three-hour yelling matches on the phone, so most of Alan's communications with [him] was through phone calls. It was very little text." (ECF No. 72–1, 25:11–15) | The Company, through Richardson's use of a third-party discovery vendor, produced 544 pages of text messages between Dan and Richardson. (Ex. 11 at 480, ¶ 7) |
| Dan did not produce any text messages or messages from other instant messaging applications between him and Bell. Dan testified that he had "mostly phone calls" with Bell. (ECF No. 72–1, 30:25–31:2) He later testified that he "possibly" used WhatsApp to communicate with Bell. (ECF No. 72–1, 31:21–22) | Bell testified that he would text Dan "regular[ly], on a monthly basis." (Ex. 9 at 465 (22:5–9)) But Bell was unable to provide any messages because he got "[l]ike, three new phones," and nothing was backed up. (Ex. 9 at 466 (102:3–21)) He also testified that he does not believe that anyone from Ignite reached out to him to try to get documents. (Ex. 9 at 466–467 (102:22–103:4)) |
| Dan did not produce any text messages or messages from other instant messaging applications between him and Schaefer, former President and COO of Ignite Brands. Dan testified that he had "mostly [phone] calls" with Schaefer. (ECF No. 72–1, 31:3–4) | Schaefer produced one message exchange between him, Dan, and Bell. (Ex. 11-B at 487–488) |
| Dan did not produce any text messages or messages from other instant messaging applications between him and Paul Bilzerian. He testified that he "possibly" used Signal to send messages to his father. (ECF No. 72–1, 32:7–9) | Schaefer produced an exchange where Dan said that he would text his father. (Ex. 11-B at 488) |

Because Dan refuses to collect electronically stored information in a manner that is acceptable in this District, and because he and his counsel have obscured discovery, a forensic examination is required to ensure that core documents are collected and produced, or at a minimum, to provide more clarity on whether documents were destroyed. *See, e.g., Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 687 (S.D. Fla. 2012) (granting motion to compel a forensic examination where responding party had produced almost no ESI and was unwilling to search its computer system for responsive documents).

**B.      A Motion to Compel May be Filed Against a Non-Party**

Dan argues that a motion to compel cannot be filed against a non-party. (*See* ECF No. 93, at 9) This contention is just plain wrong and contrary to basic civil procedure. *See, e.g., Spitzmesser v. Tate Snyder Kimsey Architects, Ltd.*, No. 2:10-cv-01700-KJD -VCF, 2012 U.S. Dist. LEXIS

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NEVADA 89134

5

4629, at *13 (D. Nev. Jan. 12, 2012) (granting motion to compel non-party to produce documents pursuant to a subpoena *duces tecum*); *V5 Techs. v. Switch, Ltd.*, No. 2:17-cv-02349-KJD-NJK, 2019 U.S. Dist. LEXIS 224375, at *2 (D. Nev. Dec. 20, 2019) (granting motion to compel against non-party); *Salinas v. P&G*, No. CV 19-6794-RGK (ASx), 2020 U.S. Dist. LEXIS 250450, at *2–3 (C.D. Cal. Oct. 23, 2020) ("Under Rule 45, when the third party responds to a subpoena with objections, the party who served the subpoena may move for an order compelling compliance. However, Rule 45 does not contemplate such motions *unless* the third party has responded. Otherwise, if the subpoena recipient 'fails without adequate excuse to obey the subpoena or an order related to it,' Rule 45 permits the court to hold the party in contempt.") (emphasis in original) (citations omitted).[1]

**C.      Dan Failed to Satisfy His Burden to Resist Discovery**

Dan argues that the Company's motion should be denied because *the Company* has not met *its* burden.[2] (*See* ECF No. 93, at 10) This argument lacks merit because settled law in this jurisdiction makes clear that the one resisting discovery carries the burden of showing why discovery should be denied. *See Eruchalu v. U.S. Bank*, No. 2:12-cv-1264-RFB-VCF, 2014 U.S. Dist. LEXIS 127974, at *4 (D. Nev. Sep. 12, 2014) ("The party resisting discovery carries the heavy burden of showing why discovery should be denied."); *Takiguchi v. MRI Int'l, Inc.*, No. 2:13-cv-01183-JAD-VCF, 2013 U.S. Dist. LEXIS 174091, at *30-31 (D. Nev. Dec. 11, 2013)

[1] The sincerity of Dan's ignorance of basic civil procedure is hard to believe because a motion to compel was granted against Ignite International, Ltd. (as a non-party) earlier this year in an unrelated proceeding. *See Steel Supplements, Inc. v. Blitz NV, LLC*, No. 2:22-cv-00020-GMN-BNW, 2022 U.S. Dist. LEXIS 37510, at *1 (D. Nev. Mar. 2, 2022); *see* ECF No. 73–1, 415–420. Ms. Stein represented Ignite International, Ltd. in that proceeding in connection with its defense of the non-party motion to compel. Despite this recent experience, Dan and his counsel have no reservations about arguing that such a procedure does not exist. The bad-faith nature of this argument is indicative of Dan's (and Ignite's) conduct in discovery, and supports the Company's position that any attempt to confer with Dan to induce him to comply with his discovery obligations would have been futile.

[2] Because he cannot oppose the substance of the relief being requested by the Company, Dan tries to mischaracterize the motion as seeking contempt sanctions so that he can cite a deluge of case law on the severity of contempt to appear to have some legal authority supporting his misguided argument. This legal authority is meaningless in the context of his opposition because it is irrelevant to the issue presented by the Company's motion. The Company neither seeks sanctions—although it would be entitled to an award of fees—nor does it seek a finding of contempt. Dan's opposition also provides no authority supporting the implicit contention that the relief requested should be construed as a motion for contempt/sanctions.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NEVADA 89134

(clarifying that a non-party is subject to the same burden as a party in resisting discovery). Because Dan has failed to satisfy *his* burden of resisting discovery, the Company's motion should be granted.[3]

**D.      Conference is Futile When a Litigant Stonewalls Discovery**

Courts have recognized that the meet-and-confer requirement is not a prerequisite to addressing the merits of a discovery motion, and that it may be excused when the meet-and-confer would be futile. *See O'Neal v. Las Vegas Metro. Police Dep't*, No. 2:17-cv-02765-APG-EJY, 2020 U.S. Dist. LEXIS 143119, at *4 (D. Nev. Aug. 10, 2020) ("futility is recognized as an exception to the meet and confer requirement"); *Eruchalu v. U.S. Bank*, No. 2:12-cv-1264-RFB-VCF, 2014 U.S. Dist. LEXIS 127974, at *8 (D. Nev. Sep. 12, 2014) (plaintiff's failure to meet and confer excused because defendant's failure to comply with discovery rendered a meet and confer futile).

Dan's use of Ignite Spirits' counsel and the same tactics of stonewalling, lying, obscuring, and delaying discovery is the underlying problem, and requiring a meet-and-confer before the Court addresses this conduct would reward Dan's and Ignite's intransigence. The dispute that led to the motion began in December 2021, when the Company was forced to serve Dan with a subpoena *duces tecum* because of Ignite's gamesmanship. (ECF No. 71–4, 020; ECF No. 71–2, 005–016; ECF No. 71–3, 17–019; ECF No. 67, at 12:1–10, 26:23–27:8) At first, Dan claimed that he was never served with the subpoena. The Company, however, anticipated that Dan would lie, and had someone record the service of the subpoena. Before he learned of the video evidence, Dan lied about the service in his declaration and during his deposition. (*See* ECF No. 71-10; ECF No. 72-1 at 408–411 (241:6–244:21)) Dan also recruited his "bodyguard," Chaz Vorrias, to lie about service on Dan's behalf. (*See* ECF No. 71-9, at 6–7)

When Dan responded to the subpoena, he lodged a litany of baseless objections, and claimed that after a diligent search and inquiry, only 42 pages of documents were responsive to

---

[3] Dan suggests that this discovery is not needed because the Company was able to file a summary-judgment motion. Summary-judgment motions have not yet been fully briefed, and this Court's decision on those motion will not relieve Dan's gamesmanship, let alone provide the clarity that such documents may provide if there are material facts that need to be resolved at trial. Accepting Dan's argument would reward his behavior, and would require litigants to repeatedly move for extensions of dispositive motions because of pending discovery issues. This is absurd.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NEVADA 89134

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NEVADA 89134

the Company's requests. (ECF No. 63–14 (151), ECF No. 63–16 (196)) Of those 42 pages of documents, Dan produced 11 pages of *screenshots* of text messages between him and Richardson. Despite Dan's proclivity for lying, the Company sought and held a meet-and-confer with Dan's counsel on January 26, 2022, regarding deficiencies of Dan's responses. (Ex. 11 at 480, ¶ 7; ECF No. 71-10 at 3 (confirming meet and confer regarding Dan's subpoena)) This conference, as well as the Company's efforts trying to resolve this issue, were pointless because they only led to three declarations from Verona, Dan, and Vorrias, each of which contains flagrant misrepresentations, and led to more depositions and further revelations surrounding Dan's flagrant disregard for responding to discovery. (Ex. 11 at 481, ¶ 7)

Rather than participate in good faith, Dan remained evasive about his search efforts and doubled down on the preposterous objections he had lodged to improperly withhold documents. (Ex. 11 481, ¶ 8; *see* ECF No. 65, ¶¶ 8–9 ("Thus, Mr. Bilzerian only produced emails for which he either sent and/or responded to, but not those on which he was merely copied, as he did not respond or take action, and it is not clear even reviewed.")) Right after Verona's disastrous performance at his deposition, Dan provided an additional 43 pages of documents that were previously withheld because Dan was "merely copied." (*See* ECF No. 71-6) Dan, however, did not produce any additional (text, Signal, Telegram, and WhatsApp) messages, and some of the documents do not include the referenced attachments. (Ex. 11 at 481, ¶ 8) As for any remaining communications for which Dan could not fabricate a justification to withhold, he placed those documents on a sham privilege log that contained no description of the documents identified in it. (*See* Ex. 11-A at 483–486) Because further efforts to obtain Dan's compliance with the subpoena without court intervention would be fruitless, the Company turned its attention to other potential sources of information related to these missing communications, including taking the depositions of Dan, Ignite Spirits, Ignite Brands, Ignite International, Bell, and Schaefer, as well as continued to seek documents from parties and nonparties.

Unfortunately, at every stage of discovery, Dan, Ignite, and their counsel obstructed the Company's efforts, and have shown that they cannot be trusted. For instance, based on the mounting evidence that Dan had failed to comply with his discovery obligations, Dan was asked

point blank during his deposition whether he would permit a forensic examination of his phone. Dan confirmed what was already clear from his conduct: he "would [not] be willing to have [his] computer or phone provided to a third-party vendor." (ECF No. 72-1 at 406 (239:17-24) ("I'm not giving up my phone to some third party I don't know.")) At this point in discovery, Dan was aware (or should have been made aware) of Verona's testimony that he did not use appropriate search terms when "collecting" responsive documents, that he was not familiar with the facts to do a proper search, and was only given limited access to Dan's "applications" by Dan. Given this express refusal to agree to a forensic examination, and the extravagant lengths to which Dan had shown he was willing to go to withhold the documents, any attempt by the Company to confer with Dan over his deficient production or to reason with him about the need for a forensic examination would have been futile. *See Pickett v. Nev. Bd. of Parole Comm'rs*, No. 2:09-cv-01695-PMP -VCF, 2012 U.S. Dist. LEXIS 54838, at *9 (D. Nev. Apr. 19, 2012) ("special circumstances obviate [the meet and confer] requirement in the instant case, and that based on the history of the communication between the parties, it does not appear that further communication between the parties would have been fruitful."); *Eruchalu v. U.S. Bank*, No. 2:12-cv-1264-RFB-VCF, 2014 U.S. Dist. LEXIS 127974, at *8 (D. Nev. Sep. 12, 2014) (excusing meet and confer requirement because "U.S. Bank failed to produce any responsive documents, answers to interrogatories, or admissions, [and as such] it is likely that U.S. Bank ignored its duty to comply with its discovery obligations.").

**E.    The Company's Motion is Timely**

Dan argues that the Company's motion is untimely.[4] (*See* ECF No. 93 at 11) Despite the time spent on this argument, Dan, just like Ignite Brands, failed to apply, or even disclose, the standard governing the timeliness of motions to compel in this jurisdiction. (*Id.* at 6–7) Rather, Dan relies on cases from other Circuits and districts that have adopted differing standards. (*Id.*)

---

[4] Dan begins this argument by citing LR 26-3, which governs motions seeking to extend discovery deadlines. (ECF No. 93 at 11) The Company's motion, however, does not seek to extend discovery deadlines. Thus, this local rule does not apply.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NEVADA 89134

In this District, a "motion to compel may be filed after the close of discovery." *Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999) ("Absent unusual circumstances, it should be filed before the scheduled date for dispositive motions"). The motion was filed after the close of discovery and before the dispositive motion deadline. Beyond that, there is no specific deadline set forth in the governing rules, and a determination of the timeliness of such a motion is left to the exercise of judicial discretion. *Wyles v. Sussman*, 445 F. Supp. 3d 751, 755 (C.D. Cal. 2020). That determination is guided by whether the moving party unduly delayed in seeking relief. *Gault*, 184 F.R.D. at 622. Although a standard of "undue delay" is somewhat amorphous, courts in this District are guided by the below non-exhaustive list of factors to determine the timeliness of a motion to compel:

> (1) the length of time since expiration of the discovery deadline; (2) the length of time the moving party has known about the discovery; (3) whether the discovery deadline has been extended; (4) the explanation for the tardiness or delay; (5) whether dispositive motions have been scheduled or filed; (6) the age of the case; (7) any prejudice to the party from whom discovery is sought; and (8) disruption of the Court's schedule.

*Herndon v. City of Henderson*, 507 F. Supp. 3d 1243, 1247–48 (D. Nev. 2020). "As the multitude of potential considerations evidences, the timeliness of a motion to compel is determined based on 'the entire complex of circumstances that gave rise to the motion, and what is untimely in one case may not be in another.'" *Id*. (citation omitted).

The Company should not be punished for its efforts to obtain missing documents and information from others to avoid motion practice, especially given the stonewalling and dilatory conduct by Dan and his "companies." Applying these non-exhaustive factors to the circumstances of this case supports a finding that the Company's motion is timely. As for the first and third factors, the discovery deadline has never been extended, and had only recently passed at the time the Motion was filed—less than a month before. Factors one and three thus support the Company's request.

As for the second and fourth factors, the Company did not delay filing the motion in any manner as it was not aware that it would be unable to obtain the documents sought (or testimony) until near the conclusion of discovery. Dan's final supplementation to the subpoena occurred on

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NEVADA 89134

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NEVADA 89134

March 10. (*See* ECF No. 71-6.) Because Dan is a non-party, the Company began extensive efforts—and incurred substantial costs—to resolve the issues regarding Dan's deficient search efforts and to obtain these documents from alternate sources without court intervention. *See* ECF 92 at 5 ("Counterclaim Plaintiff deposed seven (7) witnesses about preservation efforts"); *see V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 365 (D. Nev. 2019) (finding proper an 11-month delay between the response to a subpoena and the filing of a motion where a party "thwarted the meet-and-confer process by ignoring its requests" and where the party seeking the discovery "eventually turned to incoming party discovery before deciding whether to further press the issue . . . [and] seek enforcement"). For example, the Company first deposed Verona, the individual that Dan tasked with searching for documents responsive to the subpoena *duces tecum*. That deposition was a farce and only heightened the concern over Dan's production. (*See* ECF No. 70 at 6-9.) Because Dan refused to properly search his documents, the Company then sought to obtain information regarding the communications by deposing Dan and his business associates to whom those communications were sent. (Ex. 11 at 481, ¶ 8) The last of these depositions[5] occurred on May 26, 2022—five days before the discovery cutoff—and the transcript from this deposition was not received until June 17, 2022. (Ex. 11 at 481, ¶ 10) Because it was ultimately unable to obtain information sought through alternate channels, the Company promptly filed the motion 12 days later. While Dan argues with no support that the motion is untimely because it was not filed before the discovery cutoff (*see* ECF No. 93 at 11), it is unclear how the Company could have moved to compel Dan's compliance substantially before it did given the timeline of events. Factors two and four thus support the Company's request.[6]

As for the sixth factor, this case is relatively new and began less than a year ago. Besides discovery, the Company faced two motions to dismiss, and has had to deal with ongoing discovery violations throughout this litigation. Factor six thus supports the Company's request.

[5] Scheduling Schaefer's deposition took longer because of his recent "resignation" as President and COO of Ignite Brands, Schaefer's efforts to avoid service (which required hiring a private investigator to locate him), and travel to Connecticut to depose him.

[6] As for the fifth factor, Ignite Spirits, Inc. and the Company filed summary-judgment motions. Those motions likely will not be resolved for months, and there is no prejudice allowing this motion to be resolved and requiring Dan to honor his discovery obligations.

11

As for the seventh factor, no prejudice will be suffered by Dan through the issuance of the relief sought in the motion. The Company is not seeking new discovery. Rather, the Company merely asks the Court to require Dan to comply with his existing discovery obligations. Dan is also Ignite Brands' CEO and Chairman, the sole director of Ignite International, and was intimately involved in the transactions that underlie this litigation. The documents sought—communications sent and received by Dan in his capacity as a director and officer of Ignite—are business records, and are only being sought from Dan due to the gamesmanship employed by Ignite and orchestrated by Dan and his counsel. *See, e.g., Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 793 (Del. Ch. 2016) ("If [the CEO] chose to use a personal email account to conduct [company] business, she must produce responsive documents. . . . A corporate record retains its character regardless of the medium used to create it."). Thus, any prejudice complained of by Dan is the result of his own actions and is overshadowed by the prejudice that would be suffered by the Company, who is being denied critical documents to which it is entitled.

As for the final factor, the Court's schedule will not be disrupted by an order granting the motion because no trial has been set, and discovery will not be reopened. Because the factors overwhelmingly support the Company's request, and because Dan offered no analysis contradicting this conclusion, the Company's motion was timely filed.

## CONCLUSION

The Company's motion should be granted.

Dated: July 20, 2022          Respectfully submitted,


                              /s/ *Brian D. Downing*
                              Jon T. Pearson
                              HOLLAND & HART LLP
                              9555 Hillwood Drive, 2nd Floor
                              Las Vegas, Nevada 89134

                              *Counsel for Defendant/Counterclaim Plaintiff*
                              *Consulting by AR, LLC*

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NEVADA 89134

**CERTIFICATE OF SERVICE**

I certify that on July 20, 2022, an accurate copy of this **DEFENDANT CONSULTING BY AR, LLC'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL FORENSIC EXAMINATION OF DAN BILZERIAN'S CELLULAR PHONE AND COMPUTER/TABLET** was served by submitting electronically for filing and service with the United States District Court, District of Nevada's e-filing system, and served on counsel electronically in accordance with the E-service list to the following email addresses:

Kimberly P. Stein                         Ryan A. Ellis
FLANGAS LAW GROUP                  RYAN ELLIS LAW CORPORATION
3275 South Jones Blvd., Suite 105   3275 South Jones Blvd., Suite 105
Las Vegas, Nevada 89146             Las Vegas, Nevada 89146
kps@fdlawlv.com                     ryan@ryanellislaw.com


                                          /s/ *Brian D. Downing*

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NEVADA 89134

13

### INDEX OF EXHIBITS TO REPLY

| Exhibit | Description | No. of Pages |
|---------|-------------|--------------|
| 6 | Excerpts from Deposition of Ignite International Brands, Ltd. | 430–442 |
| 7 | Excerpts from Deposition of Ignite Spirits, Inc. | 443–451 |
| 8 | Excerpts from Deposition of Ignite International, Ltd. | 452–459 |
| 9 | Excerpts from Deposition of David Bell | 460–468 |
| 10 | Excerpts from Deposition of John Schaefer | 469–478 |
| 11 | Declaration of Jon T. Pearson | 479–482 |
| 11-A | Dan Bilzerian's Privilege Log | 483–486 |
| 11-B | Text Message Exchange Produced by John Schaefer | 487–488 |
| 12 | Declaration of Steve Ketter | 489–491 |

19288489_v3

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NEVADA 89134

14