# Exhibit 12

# Declaration of Steve Ketter

Gregory S. Gilbert (6310)
Jon T. Pearson (10182)
Brian D. Downing (14510)
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada 89134
702.669.4600
702.669.4650 fax
gsgilbert@hollandhart.com
jtpearson@hollandhart.com
bddowning@hollandhart.com

*Counsel for Defendant/Counterclaim Plaintiff
Consulting by AR, LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IGNITE SPIRITS, INC., a Wyoming corporation,<br><br>Plaintiff,<br><br>v.<br><br>CONSULTING BY AR, LLC, a Florida limited liability company; DOES I through X, inclusive; and ROE BUSINESS ENTITIES I through X, inclusive,<br><br>Defendants.<br><br>And All Related Claims. | Case No. 2:21-cv-01590-JCM-EJY<br><br>**DECLARATION OF STEVE KETTER** |

I, Steve Ketter, declare:

1.      I am over 18 years old and am a licensed private investigator and armed security officer in the State of Nevada. I carry the designation of PPO; which through the State of Nevada PILB stands for 'Private Patrol Officer' which allows me to work for the public. I have held this capacity in the state of Nevada since 2018. I have been a private investigator for over 30 years and handled personal protective work for 27 years.

2.      On December 15, 2021 I was requested by attorney Jon Pearson to help their process server who was attempting to serve Dan Bilzerian at the Resorts World Casino.

1

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NEVADA 89134

489

3.    My role was to assist in locating and identifying Mr. Bilzerian along with providing security for the process server. This particular process server was named José and I was in contact with him by telephone initially.

4.    Upon arrival at the Casino, I went up to the Starlight Lounge located on the 66th floor where it was reported that Mr. Bilzerian's company, Ignite, was having an event. Once inside the lounge, I saw that there were several people and it was clear that an event was being held. Mr. Bilzerian was not present. Just after 7:00 PM, I received a text message from the process server José who told me that Mr. Bilzerian had just arrived.

5.    Subsequent to this, I was able to see Dan Bilzerian coming into the Starlight Lounge. Mr. Bilzerian was wearing a white T-shirt, faded jeans and was seen with his hair in a slight Mohawk. As he is a recognized celebrity and there are multiple pictures available online, he was immediately identified and confirmed.

6.    He was accompanied by a white male who appeared to be his security agent. Based on photographs and a subsequent affidavit that had been prepared by this agent, I was able to positively identify him as Chaz Vorrias.

7.    For approximately the next two hours I was able to make limited observations of Mr. Bilzerian and Mr. Vorrias inside the event. Just after 9:00 PM, I went downstairs to the Conrad lobby via the elevator that comes from the Starlight Lounge. I had spoken with the process server and saw that he was near the hotel front entrance prepared for Mr. Bilzerian to exit.

8.    At approximately 9:35 PM, a large group of people was seen coming out of the elevator and walking towards the front of the hotel. The security agent, Chaz Vorrias, was at the front of the group at least 15 feet away from the other people. Mr. Bilzerian was among the individuals and was seen surrounded by several women. As he exited the elevator and crossed the lobby, the process server José approached him in the middle of the lobby and they both stopped briefly. José was observed handing Mr. Bilzerian a set of papers, then continuing on. Mr. Vorrias was either at the front of the hotel or just outside; but was not in the area of this group when the service was made.

2

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NEVADA 89134

490

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NEVADA 89134

9.     Immediately subsequent to the service on Mr. Bilzerian, at 9:36 PM, the process server sent me a text that read, "He took it."

10.     I called process server and spoke with him. He told me that he had approached Mr. Bilzerian and called him out by name then handed him the subpoena and documents.

11.     I was able to videotape Mr. Bilzerian walking out of the elevator with the group and being served by the process server. I provided a copy of this tape to the attorney, Jon Pearson. In the videotape, you can clearly see and identify Mr. Bilzerian, the process server José, and the papers being handed to Mr. Bilzerian. During this transaction, it is clear that Mr. Bilzerian stopped briefly when approached by the process server and looks down at the papers as he takes them.

12.     At no time did the process server have any contact with Mr. Bilzerian's driver, the security agent or limousine bus.

13.     The process server did not leave any paperwork with the driver or vehicle.

14.     After the service of process, both the process server and I left the Casino and reminded the process server to prepare an affidavit and get the returns of service over to the client.

15.     I was subsequently told that the security agent Chaz Vorrias had prepared a declaration and was provided a copy of this to review.

16.     In my review of the declaration, I noticed that on line 15, Mr. Vorrias stated that "at no time did anyone approach Mr. Bilzerian to serve him the subpoena or hand him anything." This is not true as the videotape clearly shows the contrary.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 20, 2022, Las Vegas, Nevada.

/s/ *Steve Ketter*
Steve Ketter

19297368_v1

3

**491**