UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| IGNITE SPIRITS, INC., a Wyoming corporation,<br><br>            Plaintiff,<br><br>   v.<br><br>CONSULTING BY AR, LLC, a Florida limited liability company; Does I through X, inclusive; and Roe Business Entities I through X, inclusive,<br><br>            Defendants.<br><br>Consulting by AR, LLC,<br><br>            Counterclaim Plaintiff,<br><br>   v.<br><br>IGNITE SPIRITS, INC. (f/k/a Ignite Beverages, Inc.); IGNITE INTERNATIONAL LTD.; and IGNITE INTERNATIONAL BRANDS, LTD.,<br><br>            Counterclaim Defendant. | Case No. 2:21-cv-01590-JCM-EJY<br><br>**ORDER** |

Pending before the Court is Defendant/Counterclaim Plaintiff Consulting by AR, LLC's Motion to Compel Forensic Examination of Dan Bilzerian's Cellular Phone and Computer/Tablet.[1] ECF No. 70. The Court has considered the Company's Motion, Non-Party Dan Bilzerian's Response in Opposition to the Motion (ECF No. 93), and the Company's Reply (ECF No. 98). The Court has also reviewed the Motion to Supplement filed by the Company (ECF No. 109) and the Response thereto (ECF No. 114).

**I.    Relevant Background**

Despite questionable testimony by Dan Bilzerian during his deposition suggesting he was never served with the subpoena duces tecum that pertains to the issues underlying this Motion, the

---

[1] Consulting by AR, LLC is referred to herein as the "Company."

1

credible evidence shows the Company served the subpoena on Mr. Bilzerian that included seven topics.[2] ECF No. 71-2 at 2-13. No objection to the subpoena was made.

It is undisputed that Mr. Bilzerian is the Chairman and CEO of Ignite International Brands ("Ignite Brands"), a publicly traded company, and the sole Director of Ignite International Ltd. ("Ignite International"). ECF No. 93 at 5. Mr. Bilzerian is further alleged to be "a well-known internet celebrity." *Id*.

At Mr. Bilzerian's deposition, taken on April 5, 2022, he claimed not to know how one of the subsidiaries of Ignite Brands is structured, whether he is a director of Ignite International or what title, if any, he held with Ignite Spirits. ECF No. 72-1 at 86-87. In addition to Mr. Bilzerian's lack of knowledge given his admitted very senior roles with two of the three entities named in this dispute, when asked who schedules board meetings for Ignite Brands, Mr. Bilzerian invoked the Fifth Amendment. *Id*. at 72-74. When asked if the Ignite Brands board of directors met at all in 2021, there was discussion regarding whether Mr. Bilzerian would invoke the Fifth Amendment. *Id*. at 75. Thereafter, Mr. Bilzerian confirmed he would invoke his Fifth Amendment right if asked what "generally is discussed" regarding the various Ignite entities at board meetings. *Id*. at 90.[3] When Mr. Bilzerian was shown Exhibit 6 to his deposition, a "Management Discussion and Analysis for the three and nine months ended September 30, 2021, and 2020," which he recognized as a public filing, he again invoked the Fifth Amendment when asked if he authorized his signature on the document. *Id*. at 107-110.

With respect to the Letter Agreement facially between the Company and Ignite Spirits, Mr. Bilzerian testified and confirmed he thought it was a "shit deal," as was the "deal" with Resorts World, LLC, a new casino-resort on the Las Vegas Strip. *Id*. at 111-12. It is the Letter Agreement and "deal" with Resorts World that underlie this entire dispute. ECF No. 1. When asked why "Ignite" would publicly disclose a deal it thought was so bad, Mr. Bilzerian invoked his Fifth

---

[2]   Dan Bilzerian's father is Paul Bilzerian. Dan Bilzerian is referred to in this Order as Mr. Bilzerian. To the extent his father comes up, he will be referred to as Paul Bilzerian.

[3]   During the deposition, the Company asked Mr. Bilzerian: "So how the board meetings are called or scheduled is an area that you're going to invoke the Fifth Amendment; is that accurate?" Mr. Bilzerian answered "Yes." The Company next asked: "What all is discussed at board meetings generally is a subject matter that you would invoke the Fifth Amendment; is that correct?" Mr. Bilzerian again answered "Yes." *Id*. at 92. When asked who participates in the board meetings, Mr. Bilzerian again invoked the Fifth Amendment. *Id*. at 93.

Amendment rights. *Id*. at 113.  Mr. Bilzerian also invoked the Fifth Amendment when asked if it was his father, Paul Bilzerian, who authorized the signature on the Letter Agreement. *Id*. at 114; *see also id*. at 199.

When asked about a press release dated December 21, 2021, titled "Ignite Announces Stock Option Grants and Issuance of Convertible Debentures," Mr. Bilzerian invoked his Fifth Amendment rights. *Id*. at 114-15.  He did so again when asked if he read the press release before it went public. *Id*. at 123.  When asked what David Bell, an unpaid consultant for "Ignite" did for the companies, Mr. Bilzerian invoked the Fifth Amendment. *Id*. at 116, 120; *see also id.* at 184, 200. When asked what advice Paul Bilzerian provides to Ignite Brands, Mr. Bilzerian invoked the Fifth Amendment. *Id*. at 121-22.  Mr. Bilzerian invoked the Fifth Amendment when asked if Paul Bilzerian could bind Ignite Brands to deals. *Id*. at 183.

The above summary provides contextual background to the Court and its determination of whether Mr. Bilzerian was compliant with his obligation to search for documents responsive to the Company's subpoena seeking Mr. Bilzerian's communications with Paul Bilzerian and David Bell. *See* ECF No. 71-2 (the subpoena duces tecum) at 13 seeking documents and communications between Mr. Bilzerian and David Bell and between Mr. Bilzerian and Paul Bilzerian.  In fact, a review of Mr. Bilzerian's deposition transcript, in light of the breadth of the dispute in this case, with which the Court and parties are fully familiar, leads the Court to be concerned that a reasonably thorough search for responsive documents was not done.  This concern deepens when the Court considers the number of documents produced by the Company supporting the contention that Mr. Bilzerian did not produce all that is in his possession, custody or control responsive to the unobjected to subpoena duces tecum.  ECF Nos. 70 at 5; 98 at 6.  Indeed, it is uncontested that Mr. Bilzerian produced eleven messages between himself and Alan Richardson (the sole member and manager of the Company), and no messages between himself and Paul Bilzerian, David Bell or John Schaefer. ECF No. 70 at 5.

Mr. Bilzerian also does not contest the fact that Paul Bilzerian participated in preparation of Ignite Spirits, Ignite International, and Ignite Brands' designated 30(b)(6) witness. ECF No. 70 at 4.  Further, and most importantly, are the undisputed facts regarding the person designated by Mr.

Bilzerian to search for responsive documents. That individual, Jason Verona, was not provided a copy of the subpoena in which the documents requested were identified, was not provided information necessary to do a proper search (such as email addresses or phone numbers), and did his search without being provided access to Mr. Bilzerian's cell phone. *Id*. at 8-9. Mr. Verona has no experience with forensic searches and had no understanding of how to enter queries when searching for information responsive to a subpoena request. *Id*.

Ultimately, at his deposition, Mr. Verona was improperly advised not to answer questions based on an unproduced, alleged non-disclosure agreement about which Mr. Verona had no substantive knowledge. *Id*. at 7-8 (citing *Hologram USA, Inc. v. Pulse Evolution Corp.*, Case No. 2:14-cv-00772-GMN-NJK, 2016 WL 3353935, at *2 (D. Nev. June 10, 2016) (internal citation omitted). Mr. Bilzerian does not mention or respond to the Company's presentation regarding Mr. Verona; instead, Mr. Bilzerian simply states that Mr. Verona, among others, "provided documents and participated in discovery." ECF No. 93 at 6.

The totality of the information presented to the Court, and largely uncontested by Mr. Bilzerian in his Response to the Company's Motion, demonstrates there is a serious question regarding whether a thorough search for responsive documents was made. In response to the Company's Motion, Mr. Bilzerian argues that "there is a question as to whether Mr. Bilzerian was actually served with the instant motion," the Company cannot bring a motion to compel against a non-party (an argument unsupported by a single citation), the Court's "jurisdiction" ended when Mr. Bilzerian responded to the subpoena duces tecum (a concept again unsupported by law), the Company failed to meet and confer, the Company misstates Mr. Bilzerian's testimony regarding a forensic search of his cell phone despite Mr. Bilzerian's testimony that he would not give up his phone to some third party he does not know, the Company is trying to "blackmail" Mr. Bilzerian, and the Company's Motion is untimely. *See* ECF No. 93 generally. Mr. Bilzerian also throws in a paragraph in which he states the Company lacks standing and a claim of frivolousness. *Id*. at 6-7.

## II. Discussion

### A. The Company Demonstrates a Meet and Confer Would be Futile.

While a meet and confer obligation is generally required before a motion to compel will be considered by the Court, this requirement may be excused by futility. *Gayler v. High Desert State Prison*, Case No. 2:17-CV-02429-JAD-EJY, 2020 WL 1149894 at *1 (D. Nev. Mar. 9, 2020); *Eruchalu v. U.S. Bank*, Case No. 2:12-cv-1264-RFB-VCF, 2014 WL 4546800, at **3-4, 2014 (D. Nev. Sep. 12, 2014) (plaintiff's failure to meet and confer excused because defendant's failure to comply with discovery rendered a meet and confer futile). Here, based on: the differences between the parties to the dispute presented by the Company's Motion; Mr. Bilzerian's initial failure to produce responsive documents on which he was cc'd rather than the sender or recipient; his choice of Jason Verona to search for responsive documents; Mr. Bilzerian's approach to his deposition; and the overall rancor that preceded the instant Motion, the Court finds a meet and confer would have proved futile. Thus, the Company's failure to meet and confer is excused.

### B. Compelling Compliance with a Subpoena Duces Tecum is Authorized by Rule and Supported by Case law.

Federal Rule of Civil Procedure 45(d)(2)(B)(i) states: "At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." When interpreting this Rule, the Central District of California held that Rule 45(d)(2)(B)(i) properly applies when "the third party has responded" to the subpoena. *Salinas v. Procter and Gamble Company*, Case No. CV 19-6794-RGK (ASx), 2020 WL 8455192, at *1 (C.D. Cal. Oct. 23, 2020). The Central District of California further found that a court may order a forensic examination of electronic devices when there is reason to question the candor of a party's production in response to a Rule 45 subpoena. *Addison v. Monarch & Associates, Inc.*, Case No. CV 14-00358-GW (JEMx), 2016 WL 11530424, at *1 (C.D. Cal. Nov. 10, 2016). *See also Patterson v. Chiappa Firearms, USA, LTD*, Case No. MC-21-21-M-DLC-KLD, 2021 WL 5447440, at *2 (D. Mt. Nov. 22, 2021) *citing La Fosse v. Winco Foods, LLC*, Case No. 1:21-mc-00594-BLW, 2021 WL 4557207, at *1 (recognizing that "the authority to decide a motion to compel arising out of [a Rule 45 subpoena] is vested with the court where compliance is

required.'") (brackets in original). The Court could locate no case law suggesting, let alone holding, that the Court lacks jurisdiction to compel a more thorough response to a Rule 45 subpoena once a response was given. The Court found no case law supporting the contention that the Company lacks standing to move to compel Mr. Bilzerian's compliance with the subpoena in the circumstances presented here.

### C. The Company's Motion was not Untimely and a Forensic Exam is Warranted.

The time within which to file a motion to compel responses to a subpoena duces tecum is not unlimited. *V5 Technologies, v. Switch, LTD*, 332 F.R.D. 356, 363 (D. Nev. 2019). Rather, such a motion must be brought without undue delay. *Id*. However, there is no per se rule preventing a motion to compel from being filed after the close of discovery. *Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999). Courts often consider the following factors to determine if a motion to compel is untimely: "(1) the length of time since expiration of the discovery deadline; (2) the length of time the moving party has known about the discovery; (3) whether the discovery deadline has been extended; (4) the explanation for the tardiness or delay; (5) whether dispositive motions have been scheduled or filed; (6) the age of the case; (7) any prejudice to the party from whom discovery is sought; and (8) disruption of the Court's schedule." *V5 Technologies*, 332 F.R.D. at 360-61 (internal citations omitted).

Applying these factors in this case, the Court notes that discovery closed in this matter on May 31, 2022 (ECF No. 32 at 3) with no request to extend the discovery period prior to its close. The instant Motion to Compel was filed 29 days later on June 29, 2022. ECF No. 70. It is undisputed that the Company deposed seven witnesses seeking information regarding preservation of documents (ECF No. 92 at 5) and that one of these depositions was of Mr. Verona after a motion for protective order brought by Ignite Spirits was denied (ECF No. 67 at 27). Nonetheless, the information provided to Mr. Verona and his understanding of his obligations to search for responsive documents is questionable at best. ECF No. 70 at 7-9. The Company took three additional depositions, including the former president of Ignite Brands, Mr. Schaefer (who had to be located by a private investigator), on May 26, 2022. ECF No. 98 at 12. The transcript of some depositions were not received until June 17, 2022. *Id*. Thus, while Mr. Bilzerian's responses to the subpoena was known

by the Company in March 2022, whether information could be gleaned from other sources was not finally known until the end of May. *Id*. at 11-12. Based on these facts, the Court concludes factors one, two, three, and four above fall in favor of finding the Motion to Compel was not unduly delayed.

Several dispositive motions are pending in this matter. These include, but are not limited to, motions for summary judgment filed on June 30, 2022 by the Company, and July 7, 2022 by Ignite Spirits. These filings militates against granting a motion to compel under factor five above. Overall, however, given the issues that remain pending including which entities are proper parties to this action,[4] and given Mr. Bilzerian's failure to timely cooperate in a reasonable search of documents responsive to the subpoena request, the Court will not deny the Motion to Compel because it was filed just one day before the dispositive motion deadline set by the Court.[5] The Court finds factor five is neutral, supporting neither that there was undue delay nor presumptive timeliness.

The Court does not ignore that ordering a forensic examination of Mr. Bilzerian's cell phone, tablet, and/or laptop computer will delay proceedings (factor eight). In contrast, courts generally favor issues be decided on their merits, which analysis could be influenced by documents Mr. Bilzerian has not looked for, let alone produced. *Painters and Allied Trades District Council 82 Heath Care Fund v. Takeda Pharmaceutical Co. Ltd.*, Case No. 2:17-cv-07223-JWH-ASx, 2022 WL 2189528, at *2 (C.D. Cal. Feb. 25, 2022) ("[I]t is unclear why form should supersede substance, especially if it is a bar to relevant evidence. Like other courts in this Circuit, this Court 'favors decisions on the merits.'" *Parkin v. Tilton*, 2009 WL 55962, at *2 (E.D. Cal. Jan. 7, 2009) (granting plaintiff's request to extend discovery deadline notwithstanding procedural missteps)).

The Court also considers that this case was filed less than one year ago and the parties agreed the discovery period should be 270 days, not the presumptive 180 days, recognizing this is a more complicated matter than a run-of-the-mill contract dispute (factor six). No trial date has been set and no due date for the joint pretrial order is yet clear as this will depend on the outcome of pending motions. Thus, granting the Motion to Compel will not unduly disrupt the Court's schedule

---

[4] *See* ECF Nos. 48, 51, 56, 57.
[5] Specifically, the deadline for filing dispositive motions, set in the only scheduling order in this case, was June 30, 2022 (ECF No. 32 at 3) rendering Ignite Spirits' Motion technically untimely.

7

1    The last question the Court considers is prejudice to Mr. Bilzerian (factor seven).  This factor requires the Court to review the law pertaining to forensic examination within the confines of the scope of discovery.  Rule 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  Relevancy remains a broad concept.  *Brown v. Geico Casualty Company*, Case No. 2:17-cv-01880-JCM-VCF, 2018 WL 11298172, at *1 (D. Nev. Jan. 17, 2018) (internal citations omitted).  Information within the scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1).  Further, courts generally order a forensic examination of an electronic device only after a finding of some discovery violation. *Lincoln Benefit Life Co. v. Fundament*, Case No. SACV 18-000260-DOC (JDEx), 2018 WL 6133672, at *3 (C.D. Cal. Nov. 7, 2018) (collecting cases); *Addison*, 2106 WL 11530424, at *1 ("a forensic examination of a computer should not be ordered as a matter of course").

Here, absent Mr. Bilzerian's objection to the subpoena duces tecum, concerns regarding Mr. Bilzerian's deposition (which transcript the Court reviewed in its entirety), and given the evidentiary basis for questioning whether a search for responsive documents was properly done, the Court finds a forensic examination of cellular telephones and the tablet/laptop computer used by Mr. Bilzerian to communicate during the time period specified in the subpoena is appropriate.  In sum, the Court finds, as supported by evidence, that Mr. Bilzerian did not comply with his discovery obligations under Rule 45 of the Federal Rules of Civil Procedure.  Further, there is no evidence that the Company's efforts to have electronic devices forensically examined is for the sole purpose of harassing or embarrassing Mr. Bilzerian.  These bald statements in the Opposition to the Company's Motion to Compel do not offer evidentiary or factual support for the proposition made.  The unsupported argument does not undermine the evidence regarding Mr. Bilzerian's failure to have an appropriate and thorough search for records done.  *Polymer Plastics Corporation v. Hartford*

*Casualty Insurance Co.*, Case No. 3:05-cv-00143 ECR (VCP), 2007 WL 9677059, at *6 (D. Nev. Aug. 27, 2007).

**III.    Order**

IT IS HEREBY ORDERED that Defendant/Counterclaim Plaintiff Consulting by AR, LLC's Motion to Compel Forensic Examination of Dan Bilzerian's Cellular Phone and Computer/Tablet (ECF No. 70) is GRANTED.

IT IS FURTHER ORDERED that Consulting by AR, LLC's Motion for Leave to Supplement (ECF No. 109) is DENIED.

IT IS FURTHER ORDERED that:

1.    The parties must meet and confer within five (5) days of the date of this Order to discuss and propose an appropriate, independent third party forensic expert who will examine the cellular telephones and tablet/laptop used by Mr. Bilzerian during the period January 1, 2021 through the present for communications with Alan Richardson, Paul Bilzerian, John Schaefer, David Bell, and representatives of Resorts World, LLC regarding the topics identified, to which no timely objections were made, in the subpoena duces tecum served on Dan Bilzerian.

2.    Each party must provide to the opposing party a list containing, at most, the names of three forensic examiner on the date of the meet and confer. Each party must also provide the opposing party a list of proposed search terms. If either party fails or refuses to provide names of an examiner, the examiner shall be selected from the names provided by the complying party. If either party fails or refuses to provide a list of proposed search terms, the search terms shall be selected from the list provided by the party providing the search terms.

3.    At the meet and confer the parties must discuss the proposed experts and proposed search terms. The parties must set a second meet and confer, which will take place within five (5) days of the first meet and confer at which the forensic examiner and search terms must be agreed upon. If agreement cannot be reached, the parties must file a notice with the Court identifying the topics of disagreement (including the names of those forensic experts from whom the examiner will be selected, the agreed upon search terms, and the disputed search terms) within three (3) days of

the second meet and confer. The Court will then select the examiner and search terms to be used by the examiner.

4. Once a forensic examiner is identified, the Company must formally retain the examiner and provide the agreed upon or Court ordered search terms to the same immediately. The Company must obtain from the examiner his/her/its protocol for obtaining and searching the electronic devices at issue (such as, whether they are to be imaged or examined in some other fashion) and provide the information to the opposing party no later than one business day after receipt. If the forensic examiner has recommended changes to the search terms, the parties will meet and confer with the examiner to agree upon the final terms. The meet and confer with the examiner must occur within five (5) days of retention.

5. Mr. Bilzerian must provide his electronic devices (cellular telephone, tablet, and/or laptop computer) to the forensic expert within three (3) days of the date the protocol for obtaining and examining the devices is received.

6. If devices are to be imaged, they may be returned to Mr. Bilzerian upon the forensic examiner's determination that he/she/it has all information needed from such devices.

7. Mr. Bilzerian must not remove, delete or otherwise change any information on the devices before or after they are imaged or otherwise inspected such that information could be altered, lost or destroyed.

8. Upon completion of the search done by the forensic examiner, the results must be provided to counsel for Mr. Bilzerian for review and designation of any results over which attorney client privilege or work product may be claimed. The designation of responsive documents as privileged or work product must be identified on a complete and thorough privilege log, which must be produced to the Company, together with all search results over which the same is not asserted, no later than ten (10) days after receipt of the results are received.

9. If there is disagreement or questions about documents withheld, which must appear on the privilege log, the parties will meet and confer within five (5) days of receipt of the log. If the parties cannot come to agreement regarding all documents withheld, the parties must file a joint statement that includes the privilege log and identifies those document withheld that are in dispute.

10. Mr. Bilzerian must simultaneously file, under seal, and without copying the Company, a copy of all disputed withheld documents for *in camera* review. This must include all documents previously withheld as attorney client privilege represented on ECF No. 98-7 at 1-5.

11. The cost of the forensic examination will be borne by the Company unless there is a preponderance of evidence that Mr. Bilzerian unreasonably caused an increase in such costs. Such demonstration must be presented through a motion to the Court.

12. To the extent there are any questions or there is need for clarification regarding any of the above, the parties must contact chambers to request a prompt hearing at which time such questions can be answered and clarification provided.

Dated this 11th day of August, 2022.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE