1
2
3
4                    UNITED STATES DISTRICT COURT
5                         DISTRICT OF NEVADA
6                                * * *
7    IGNITE SPIRITS, INC.,                    Case No. 2:21-CV-1590 JCM (EJY)
8                            Plaintiff(s),              SEALED ORDER
9         v.
10   CONSULTING BY AR, LLC,
11                          Defendant(s).
12
13          Presently before the court is defendant/counterclaimant Consulting by AR, LLC ("AR")'s
14   motion for summary judgment.  (ECF Nos. 83, 91).  Plaintiff/counterdefendant Ignite Spirits,
15   Inc. ("Spirits") responded.  (ECF No. 100).  AR replied. (ECF No. 112).
16          Also before the court is Spirits' motion for summary judgment.  (ECF No. 90).   AR
17   responded.  (ECF No. 103).  Spirits replied.  (ECF No. 107).
18          Also before the court are fifteen various motions and objections to several of the
19   magistrate's orders as well as report and recommendations (the "various motions").  (ECF Nos.
20   39, 40, 52, 56, 99, 110, 111, 121, 122, 124, 133, 147, 156, 165, 170).  As set forth below, the
21   court GRANTS AR's instant motion for summary judgment (ECF Nos. 83, 91), and DENIES as
22   moot the various motions.[1]
23   **I.    INTRODUCTION**
24          This action commenced in state court on August 18, 2021, and was subsequently
25   removed to federal court.  Spirits seeks declaratory relief that AR breached a contract to which
26   ─────────────────────
27          [1] On March 16, 2023, Magistrate Judge Youchah found Brands in civil contempt of court.  (ECF
     No. 174).  Brands objected and appealed the order on March 17, 2023.  (ECF No. 180).  Pursuant to the
28   normal briefing schedule, any response is due March 31, 2023.  Judgment in favor of AR does not render
     this moot.

**James C. Mahan**
**U.S. District Judge**

1    Spirits and AR were parties (the "letter agreement").  AR filed a countercomplaint, alleging *inter*

2    *alia*, Spirits and its parent entity Ignite International Brands, Ltd. ("Brands") are both parties to

3    the letter agreement and breached their obligations thereunder.  Unless otherwise noted, Spirits

4    and Brands are referred to collectively as "Ignite" herein.

5        *a.  Relevant Non-Parties*

6            Alan Richardson ("Richardson") is the manager and sole member of AR.

7            Dan Bilzerian ("Dan") is the founder, chief executive officer, and chairman of Brands.

8    Dan is known internationally as a social media celebrity with millions of followers.

9            Paul Bilzerian ("Paul") is Dan's father.  He serves as an unpaid consultant for Brands and

10   attends weekly management and board meetings.

11           John Schaefer ("Schaefer") is the president and a board member of Spirits as well as the

12   president and chief operating officer of Brands.

13           David Bell ("Bell") is one of Paul's close associates and also Dan's mentor.  He, like

14   Paul, serves as an unpaid consultant for Brands, attending weekly management and board

15   meetings.

16           Paul Holden ("Holden") is Brands' general counsel.

17           Resorts World Las Vegas, LLC ("RW"), is the relevant party with which Ignite sought to

18   enter an agreement.  It operates a hotel and casino at 3000 South Las Vegas Blvd., Las Vegas,

19   Nevada 89109.

20       *b.  Facts*

21           In March 2021, AR and Ignite entered into the letter agreement.[2]  The letter agreement is

22   a service contract wherein AR was to negotiate an agreement with RW (the "definitive

23   agreement").  Ignite agreed to compensate AR if "Ignite execute[d] not later than July 1, 2021, a

24   definitive agreement with [RW], acceptable to Ignite in it [sic] sole and absolute discretion,

25   which contains substantially all of the terms and conditions detailed in Exhibit A attached

26   hereto."  Exhibit A includes terms relating to, *inter alia*, promotion at RW of certain beverages

27   _____

28           [2] Ignite contends only Spirits was a party to the letter agreement, but the court finds both Spirits
     and Brands were parties thereto.  *See* section III.4 *infra*.

**James C. Mahan**
**U.S. District Judge**                                            - 2 -

1    and other products produced by Ignite, appearances by Dan, and a launch party at RW's grand

2    opening (the "desired terms").

3         AR's compensation was to be in the form of two million Canadian dollars' worth of

4    Brands subordinate voting shares ("Ignite shares"), issued simultaneously with the execution of

5    the definitive agreement.  AR was also to receive an option to purchase two million Ignite shares

6    and an additional option to purchase one million Ignite shares subject to certain terms and

7    conditions.

8         AR negotiated with RW for the next several months obtaining the desired terms and was

9    able to secure an outline proposal from RW.  Paul initially expressed positivity toward the deal,

10    but suggested altering AR's compensation should it be unable to negotiate better terms, noting

11    differences between the desired terms and terms in the outline proposal.  Dan also expressed

12    discontent with his personal obligations in the outline proposal.  Notably, Paul and Dan both

13    requested terms different from and more favorable than what was originally included in the

14    desired terms.

15         In response, AR continued to negotiate with RW.  On April 26, 2021, a letter of intent

16    was signed by both Ignite and RW.  The letter of intent, albeit temporary and non-binding,

17    evidenced the "intended terms and conditions of the collaboration between [Ignite and

18    RW]…while [the definitive agreement] is negotiated."  These terms served as the basis for the

19    final definitive agreement as further negotiations ensued.

20         On June 24, 2021, prior to the signing of the definitive agreement but pursuant thereto,

21    Dan made an appearance at RW's grand opening.  RW likewise performed some of its

22    obligations under the pending definitive agreement.  On June 25, 2021, Schaefer informed

23    Richardson that the final draft of the definitive agreement was being reviewed by Holden.  Ignite

24    and RW executed the definitive agreement on July 2, 2021.  Eighteen days later, Schaefer spoke

25    with RW regarding its new business relationship with Ignite, and RW indicated it intended to

26    honor the agreement with Ignite.  Schaefer then spoke to Paul and Bell, who agreed "Ignite

27    should honor the deal made with [AR]" based on the feedback from RW.

28

**James C. Mahan**
**U.S. District Judge**

- 3 -

1    Nevertheless, to date, AR has not been compensated under the letter agreement.  Upon

2    AR's demand of payment, Ignite filed its action for declaratory relief.

3    **II.    LEGAL STANDARD**

4    The Federal Rules of Civil Procedure allow summary judgment when the pleadings,

5    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

6    any, show that "there is no genuine dispute as to any material fact and the movant is entitled to

7    judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment

8    is "to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477

9    U.S. 317, 323–24 (1986).

10    For purposes of summary judgment, disputed factual issues should be construed in favor

11    of the non-moving party.  *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888 (1990).  However, to

12    be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts

13    showing that there is a genuine issue for trial."  *Id.*

14    In determining summary judgment, the court applies a burden-shifting analysis.  "When

15    the party moving for summary judgment would bear the burden of proof at trial, it must come

16    forward with evidence which would entitle it to a directed verdict if the evidence went

17    uncontroverted at trial."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480

18    (9th Cir. 2000).  Moreover, "[i]n such a case, the moving party has the initial burden of

19    establishing the absence of a genuine issue of fact on each issue material to its case."  *Id.*

20    By contrast, when the non-moving party bears the burden of proving the claim or

21    defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

22    an essential element of the non-moving party's case; or (2) by demonstrating that the non-

23    moving party failed to make a showing sufficient to establish an element essential to that party's

24    case on which that party will bear the burden of proof at trial.  *See Celotex Corp*., 477 U.S. at

25    323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied

26    and the court need not consider the non-moving party's evidence.  *See Adickes v. S.H. Kress &*

27    *Co.*, 398 U.S. 144, 159–60 (1970).

28

**James C. Mahan**
**U.S. District Judge**

- 4 -

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In other words, the non-moving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

## III.    DISCUSSION

AR moves for summary judgment on its breach-of-contract claim. (ECF Nos. 83, 91). If granted, AR's "remaining claims go away." (ECF Nos. 83, 91). AR further submits that Spirits' claim for declaratory relief (ECF No. 1-2) must fail. (ECF No. 83).

James C. Mahan
U.S. District Judge

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*a.   AR's breach-of-contract claim*

AR alleges Ignite breached the letter agreement by failing to compensate AR despite AR's performance under the contract.  (ECF No. 8).  In response, Ignite alleges AR materially breached the letter agreement thereby excusing its obligation to perform.  (ECF No. 100). Specifically, Ignite points to five potential breaches or genuine issues of material fact to avoid summary judgment: (1) AR failed to cause the final definitive agreement to be executed by the deadline in the letter agreement; (2) AR failed to obtain all or substantially all the desired terms; (3) the parol evidence rule bars most of AR's evidence; (4) Brands is not a party to the letter agreement and is thus not liable; and (5) the amount of damages is not clear.  The court addresses each in turn.

*(1) Execution of the final definitive agreement one day after the deadline in the letter agreement was not a material breach*

Ignite attests that because the final definitive agreement was fully executed on July 2, 2021, instead of the July 1, 2021, deadline in the letter agreement, AR materially breached the letter agreement.  (ECF No. 100).  AR contends time was not of the essence, and even if it was, a one-day delay is not a material breach.  (ECF Nos. 83, 91, 100).  The court agrees.

Materiality generally depends on whether the provision induced the party to enter it, goes to the substance of the contract, or affects an essential purpose of the contract.  *BZ Clarity Tent Sub LLC v. Ross Mollison Int'l Pty., Ltd.*, No. 2:15-cv-01605-JCM-CWH, at *12 (D. Nev. June 12, 2015).  A party is not relieved of its contractual duties for a nonmaterial breach.  *E.g.*, *Sheehan & Sheehan v. Nelson Malley & Co.*, 117 P.3d 219, 224 (Nev. 2005) (affirming an award of specific performance because one party's immaterial breach did not excuse the other party's contractual obligations).

The overall purpose the letter agreement was for AR to negotiate terms of a definitive agreement between RW and Ignite, "acceptable to Ignite in it [sic] sole and absolute discretion." (ECF No. 86-1).  While an execution deadline is included, nothing in the letter agreement indicates that "time was of the essence."  (*Id.*).  In fact, before having the executed definitive

James C. Mahan
U.S. District Judge

- 6 -

1    agreement between Ignite and RW, Dan Bilzerian made an appearance pursuant thereto, and RW

2    likewise performed obligations thereunder.  (ECF No. 83).

3         Moreover, Ignite did not express any dissatisfaction with the definitive agreement—about

4    the time it was executed or otherwise—until it was time to compensate AR for its work under the

5    letter agreement.  Executing the definitive agreement less than twenty-four hours after the

6    deadline of July 1, 2021, did not alter the effect of the definitive agreement or the resulting

7    benefit to Ignite.

8         The court finds that breaching the execution deadline of July 1, 2021, was not a material

9    breach as it did not go to the substance of the letter agreement nor did it affect the purpose of

10   thereof.  *See BZ Clarity Tent Sub*, No. 2:15-cv-01605-JCM-CWH, at *12.  Thus, it did not

11   excuse Ignite's contractual obligations to compensate AR.  *See, e.g.*, *Sheehan & Sheehan*, 117

12   P.3d at 242.

13                    *(2) To the extent AR failed to obtain any of the requested terms, Ignite waived any*
                          *dissatisfaction argument*

14

15        As early as April 2021, Ignite representatives expressed satisfaction with letter of intent

16   and terms therein, which ultimately served as the basis for the final definitive agreement.  (ECF

17   No. 86-4).  Schaefer signed the letter of intent on behalf of Ignite and, although "temporary and

18   non-binding," it contained the "intended terms and conditions of the collaboration" between

19   Ignite and RW.  (ECF No. 84-38).  In other words, Schaefer represented Ignite's satisfaction in

20   April 2021 with the terms AR negotiated for the definitive agreement.

21        Moreover, on July 20, 2021, eighteen days after the execution of the definitive

22   agreement, Schaefer represented to Richardson that parties were content with the agreement and

23   that Paul and Bell "agreed Ignite should honor the deal made with [AR]…[Bell] should be

24   contacting you this week to arrange the necessary paperwork and issuance of your shares."  (ECF

25   No. 84-13).  Ignite indicate its willingness to fulfill its obligations and thus its satisfaction with

26   AR's performance.  (*See id.*).

27        The definitive agreement that AR was contracted to negotiate was fully executed on July

28   2, 2021, with the terms secured by AR.  Once the terms of the definitive agreement were

**James C. Mahan**
**U.S. District Judge**

- 7 -

1   finalized, no representative of Ignite ever expressed dissatisfaction with AR's performance under

2   the letter agreement until it was time to compensate AR.  In fact, Ignite and its representatives

3   even began performing under the definitive agreement, expressing satisfaction with the terms

4   and thus AR's performance.[3]  Despite this, Ignite refuses payment at the eleventh hour under the

5   letter agreement to AR for allegedly failing to obtain acceptable terms, citing the provision of the

6   letter agreement that states satisfaction is determined at "the sole and absolute discretion" of

7   Ignite.

8       Ignite cannot now contradict its prior representations to avoid its obligations under the

9   letter agreement.   AR performed its duties, Ignite benefitted therefrom and expressed its

10  satisfaction, and any argument to the contrary is waived.  The court thus need not conduct an

11  analysis as to whether the definitive agreement "contains substantially all of the terms and

12  conditions" required by the letter agreement.  (ECF No. 86-1).

13          *(3) The parol evidence rule does not bar the evidence AR presents in support of*

14                      *its motion*

15      Ignite alleges that evidence presented with the instant motion is inadmissible under the

16  parol evidence rule because it demonstrates "[Ignite's] conduct **after** signing the Letter

17  Agreement." (ECF No. 100 (emphasis in original)).  This is a gross misstatement of law.

18      The parol evidence rule bars evidence of events that occurred before or simultaneously

19  with the formation of a contract and that contradicts terms of that contract.  *Khan v. Bankhsh*,

20  306 P.3d 411, 413–14 (Nev. 2013).  Evidence of "operative usages of trade, [ ] the course of

21  dealing between the parties, and [ ] the course of performance of the agreement" may be

22  considered by the court.  *TDN Money Sys., Inc. v. Everi Payments, Inc.*, 2017 WL 5148359, No.

23  2:15-cv-02197-JCM-NJK, at *4 (D. Nev. 2017) (citing Restatement (Second) of Contracts § 209

24  cmt. a. (1981)).

25      Any conduct after signing the letter agreement is indicative of the course of performance

26  of the agreement.  Moreover, the portion of Richardson's declaration that recounts events pre-

27

28      [3] By way of example, Dan made an appearance at the grand opening of RW on July 24, 2021.
He, Paul, and Schaefer all were pleased with the success of the event and deal made between RW and
Ignite.

James C. Mahan
U.S. District Judge

- 8 -

1  dating the execution of the letter agreement seeks to resolve ambiguity and does not contradict

2  terms of the letter agreement. (*See* ECF No. 84-1).

3       Thus, the court may consider the evidence that AR presented in support of the instant

4  motion.

5                    *(4) Brands is a party to the letter agreement and subject to liability*

6       Ignite contends that only Spirits is a party to the letter agreement and thus Brands is not

7  liable thereunder. Ignite points to the first paragraph of the agreement, which states "[Spirits]

8  ("Ignite") will deliver compensation to [AR] resulting from Ignite obtaining a definitive

9  agreement with [RW]." (ECF No. 100 (citing ECF No. 86-1)). Ignite also submits that Brands

10  is not a signatory to the letter agreement—only Spirits. (*Id.*).

11      Throughout the letter agreement, exclusive of exhibits, Brands and Spirits are conflated

12  as "Ignite." (ECF No. 86-1). This is apparent from the exact line Ignite points to; the definitive

13  agreement with RW was ultimately entered into by a third Ignite entity, Ignite International,

14  Ltd.,[4] yet the letter agreement simply states "Ignite" is to obtain a definitive agreement. (*Id.*).

15      Moreover, AR was to be compensated, in part, by the "issuance of the value of Two

16  Million Canadian dollars (CAD$2,000,000) of [Brands]'s subordinate voting shares (the "Ignite

17  Shares")," again using the term Ignite, but this time in reference to Brands. (*Id.*). It is apparent

18  that the term "Ignite" is used to refer to any Ignite entity throughout the letter agreement, and

19  thus the letter agreement binds both Spirits and Brands.

20      Furthermore, there are two signatures on the letter agreement: Alan Richardson,

21  Manager, and John Schaefer, President. (*Id.*). Additionally, each page of the letter agreement

22  exhibits—which offer Brands stock options as part of AR's compensation—was initialed by

23  Schaefer. (*Id.*). Ignite contends Schaefer signed on behalf of Spirits only, but Schaefer is the

24  president of both Spirits and Brands and has the authority to sign on behalf of both entities.

25  Spirits is explicitly named in the letter agreement, and Brands agreed to contractual obligations

26  thereunder evidenced by Schaefer's signature and initials. (*See id.*).

27

28

_____

[4] Ignite International, Ltd. was previously dismissed from this action. (ECF No. 123).

1    Finally, Spirits and Brands do not conduct business separately.  At the time the letter

2    agreement was executed, decisions for Spirits were made at Brands board meetings.  (ECF No.

3    85-7).  Spirits did not have board, management, or any regular meetings of its own.  (*Id.*).

4    Rather, Spirits' 30(b)(6) designee indicates that "it being a subsidiary, [Brands] being the parent,

5    any Spirits-related business or any other subsidiary-related business would get addressed at the

6    Brands board meeting." (*Id.*).

7        AR does not ask this court to "pierce the corporate veil" as Ignite contends; it simply

8    seeks to establish that Brands is a party to the letter agreement.  (ECF Nos. 83, 100).  The

9    allegedly distinct entities are so closely related that they conduct business with the same

10   managers at the same time.  This, paired with Brands' involvement in the letter agreement, is

11   sufficient to establish Brands' intent to be a party to the letter agreement.  A mere sentence

12   omitting Brands in the first paragraph of the letter agreement is insufficient to raise a genuine

13   issue of material fact to withstand the standard for summary judgment.  *See* (ECF No. 86-1);

14   *Lujan*, 497 U.S. at 888.  The court finds that Brands, along with Spirits, is a party to the letter

15   agreement.

16            *(5) Compensation, and thus damages, is clear and unambiguous*

17       Ignite contends that if the court finds AR is entitled to compensation, there is still a

18   question to damages because AR "has provided no evidence of damages." (ECF No. 100).  AR,

19   however, provides the letter agreement with its motion.  (ECF No. 86-1).  The court agrees with

20   Ignite that the letter agreement is unambiguous, including the portion that outlines how AR is to

21   be compensated for its performance.  (*See* ECF No. 100).

22        "[W]here contracts are involved, [ ] damages should place the plaintiff in the position he

23   would have been in had the contract not been breached. *Hornwood v. Smith's Food King No. 1*,

24   807 P.2d 208, 211 (Nev. 1991) (citing *Dalton Props., Inc. v. Jones*, 683 P.2d 30, 31 (Nev.

25   1984)).  Nevada has adopted the Restatement (Second) of Contracts § 347 (1979) as the proper

26   test for determining expectancy damages. *Col. Env'ts, Inc. v. Valley Grading Corp.*, 779 P.2d

27   80, 84 (Nev. 1989).  In pertinent part, the Restatement (Second) of Contracts provides that "the

28

James C. Mahan
U.S. District Judge

- 10 -

1    injured party has a right to damages based on his expectation interest as measured by [ ] the loss

2    in value to him of the other party's performance caused by its failure or deficiency."

3            Here, Ignite failed to compensate AR as expected under the letter agreement.  It is clear

4    that "within thirty days of the [full] execution of the [definitive agreement]," AR is owed "the

5    value of Two Million Canadian dollars (CAD$2,000,000) of [Brands] subordinate voting shares

6    [ ] simultaneously at the time of the [definitive agreement] being fully executed.  (ECF No. 86-

7    1).  This is the only provision under which AR seeks damages, and it is clear and unambiguous.

8    (ECF No. 83).  Thus, the letter agreement and granting of AR's motion provides AR is owed

9    $1,611,655.09 plus prejudgment interest.[5]

10            *b.  Spirits' claim for declaratory relief and motion for summary judgment*

11            Spirits' claim for relief seeks judicial determination that (1) AR breached the letter

12    agreement and Spirits did not breach the letter agreement, (2) Spirits has no further obligations

13    under the letter agreement, and (3) the letter agreement is no longer valid or enforceable as a

14    result of AR's alleged breach.  (ECF No. 1-2, ¶¶ 25–27).  The court finds that AR performed its

15    obligations under the letter agreement and that it is entitled to relief as set forth above.  Thus,

16    Spirits' claim for declaratory relief and motion for summary judgment must fail as a matter of

17    law.

18    **IV.    CONCLUSION**

19            Accordingly,

20            IT IS HEREBY ORDERED, ADJUDGED, and DECREED that AR's motion for

21    summary judgment (ECF Nos. 83, 91) as to its breach of contract claim is GRANTED.

22            IT IS FURTHER ORDERED that each of AR's remaining counterclaims (ECF No. 8) are

23    DISMISSED with prejudice.

24            IT IS FURTHER ORDERED that Spirits' motion for summary judgment (ECF No. 90) is

25    DENIED.

26

27    ───────────────

28        [5] According to the Federal Reserve, the exchange rate on July 2, 2021—when the definitive
    agreement was fully executed and thus when AR was owed its compensation—was 1.2346 Canadian
    dollar for 1 U.S. dollar.

James C. Mahan
U.S. District Judge

- 11 -

1    IT IS FURTHER ORDERED that Spirits' complaint and claim for declaratory relief
2    (ECF No. 1-2) be DISMISSED with prejudice.

3    IT IS FURTHER ORDERED AR is awarded damages against Spirits and Brands, jointly
4    and severally, in the amount of ONE MILLION, SIX HUNDRED ELEVEN THOUSAND, SIX
5    HUNDRED FIFTY-FIVE DOLLARS ($1,611,655.09) plus pre-judgment interest calculated as
6    set forth in Nevada Revised Statute 99.040.

7    IT IS FURTHER ORDERED that the following are DENIED as moot: Brands' motion to
8    dismiss (ECF No. 39); Brands' motion for a more definitive statement (ECF No. 40); Brands'
9    motion for leave to file (ECF No. 52); the magistrate's report and recommendation (ECF No.
10   56); AR's motion to strike (ECF No. 99); AR's second motion to strike (ECF No. 110); AR's
11   third motion to strike (ECF No. 111); Dan Bilzerian's objection to the magistrate's order (ECF
12   No. 121); Dan Bilzerian's motion to stay case (ECF No. 122); Brands' objection to the
13   magistrate's order (ECF No. 124); Dan Bilzerian's second objection to the magistrate's order
14   (ECF No. 133); Brands' motion to stay case (ECF No. 147); Dan Bilzerian's motion for
15   reconsideration (ECF No. 156); and AR's motion for hearing (ECF No. 170).

16   The clerk of the court is instructed to enter judgment in favor of AR in accordance with
17   the above and close this case.

18   DATED March 28, 2023.

19

20   _____
     UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**